ANTHONY GRASSO, Plaintiff-Appellee and Counterdefendant-Appellee, v. MID-CENTURY INSURANCE COMPANY, Defendant-Appellant and Counterplaintiff-Appellant (Farmers Insurance Group of Companies *et al.*, Defendants; Bonnie Hlevyack, Defendant).

First District (2nd Division)    No. 1—88—1262

Opinion filed March 28, 1989.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland, Stephen R. Swofford, and Bruce L. Carmen, of counsel), for appellant.

Thomas D. Fazioli and Paul B. Episcope, Ltd., both of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This is an appeal from orders of the circuit court granting plaintiff/counterdefendant Anthony Grasso's (Grasso's) complaint for declaratory judgment and post-trial motion, and denying defendant/counterplaintiff Mid-Century's (Mid-Century's) counterclaim for declaratory judgment. We are asked to determine whether the court entered these orders in error.

On August 13, 1985, Grasso filed a complaint for declaratory judgment against defendant Bonnie Hlevyack (Bonnie) and Mid-Century, one of defendant Farmers Insurance Group of Companies (Farmers), alleging: Mid-Century[1] issued to James Hlevyack (James) an automobile liability insurance policy, effective February 27, 1982, to August 27, 1982; on June 23, 1982, to James' daughter, Bonnie, collided with Grasso's motorcycle while driving a jeep owned by her boyfriend, Walter J. Henely, Jr. (Henely); and the jeep was insured in Henely's name by the Home and Auto Insurance Company (Home and Auto). Grasso further asserted: he filed a negligence action against Bonnie in September 1983; the policy issued by Mid-Century to James "provided excess coverage for [Bonnie]" for the collision between Grasso and Bonnie; and Mid-Century declined to provide coverage for the occurrence. Grasso sought a judgment declaring that the policy issued by Mid-Century to James provides excess coverage for Bonnie for any lia-

---

[1]Though the designation and identification of parties in the pleadings and orders of record vary, it appears that: (1) Mid-Century issued the auto liability insurance policy to James Hlevyack; and (2) only Mid-Century filed a counterclaim in this action. The facts stated in this opinion reflect these conclusions.

bility to Grasso as a result of the June 23, 1982, accident.

By answer filed June 2, 1986, Mid-Century denied that James' policy provided coverage for the collision. On September 17, 1986, Mid-Century filed a four-count counterclaim for declaratory judgment, naming Bonnie as a defendant and Grasso as a counterdefendant and insisting in the first count that: the subject policy requires that the insured provide Mid-Century with written notice of an "accident, occurrence, or loss *** as soon as practicable" after the event and forward "immediately" to the company "every demand, notice, summons or process" received by the insured; notice of the June 23, 1982, accident was not tendered to Mid-Century until December 18,1984; Bonnie never forwarded any summons or complaint from the underlying cause to Mid-Century; and the two-year delay in providing notice to Mid-Century violates the policy's notice provision and therefore relieves Mid-Century of any duty to defend or indemnify Bonnie with respect to the underlying claim. Counts II through IV similarly requested findings and declarations of noncoverage arising from the breach of other policy provisions not relevant to the instant appeal.

Grasso answered the counterclaim twice. Bonnie's September 22, 1987, answer to Grasso's complaint admitted all "allegations contained therein;" on the same day, Bonnie filed an answer to Mid-Century's counterclaim for declaratory judgment.

Following a trial, the court entered an order on November 9, 1987, finding: (1) for Farmers and Mid-Century and against Grasso and Bonnie on Grasso's complaint for declaratory judgment; (2) for Mid-Century and against Grasso and Bonnie on count I of Mid-Century's counterclaim; and (3) against Mid-Century on counts II and III of its counterclaim.

Pursuant to Grasso's post-trial motion filed December 7, 1987, the court entered another order on March 29, 1988, finding: (1) against Farmers and Mid-Century and for Grasso and Bonnie on Grasso's complaint; (2) against Mid-Century and for Grasso and Bonnie on count I of the counterclaim "pertaining to notice"; and further concluding that Farmers and Mid-Century are obligated to furnish a defense for Bonnie and to pay any judgment, "to the extent of the coverage afforded under its policy of insurance," entered against her as a result of Grasso's claim. Mid-Century appeals.

■ Mid-Century initially urges that the circuit court erroneously denied count I of its counterclaim for declaratory judgment, because Bonnie's neglect to tender prompt notice of the June 23, 1982, incident precludes coverage under James' policy. The notice clause states in pertinent part:

"In the event of accident, occurrence, or loss, written notice containing particulars shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable. *** If claim is made or suit is brought against the insured, he shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

Policy provisions establishing when the insured must notify the insurer concerning covered occurrences require notification "within a reasonable time," considering all relevant facts and circumstances. (*Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 281, 319 N.E.2d 25; *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 299, 388 N.E.2d 253.) Where, as here, the material facts are undisputed, the insured's diligence in forwarding notice to the insurer becomes solely a question of law. *Country Mutual Insurance Casualty Co. v. Van Duzen* (1953), 351 Ill. App. 112, 120, 113 N.E.2d 852; *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 83, 379 N.E.2d 34.

Bonnie testified at trial that although she knew she possessed an insurance policy for her own Mustang and she assumed her father purchased automobile liability insurance for the car he owned, she believed the primary insurance for the jeep was the only coverage available to her after the accident. She notified Home and Auto immediately following the incident, making a claim against Henely's policy. Representatives of Home and Auto charged her to speak to no one outside the agency regarding the incident and to forward all pertinent documents to them, directions with which she complied. In September 1983, Bonnie received a summons and complaint for the underlying cause of action and forwarded them to Home and Auto; thereafter, attorney Ed McCabe (McCabe) contacted Bonnie; told her "he would take care of it"; reminded her to continue sending "any memos or anything to do with the accident to him"; and told Bonnie not to speak to anyone regarding the case. McCabe mailed her copies of Grasso's interrogatories, with the answers "already typed-in," directing her to sign them only. Neither McCabe nor anyone at Home and Auto told her potential coverage was available under her own Home and Auto policy for her Mustang or under her father's policy.

Bonnie averred she had never read an insurance policy before June 1982. She had not seen the insurance policy purchased by her father from Mid-Century. She never had been in an auto accident before nor had she had any dealings with insurance agencies other than receiving from them cancellation and premium notices. It was further revealed

that Bonnie was 19 years old at the time of the accident.

■ Mid-Century argues that the court's consideration of such facts as Bonnie's youth, inexperience and accident-free driving record impermissibly exceeded the objective standard of reasonableness established in Illinois; however, courts will examine all facts tending to prove or disprove the reasonableness of the late notice. (See *Del Grosso v. Casualty Insurance Co.* (1988), 170 Ill. App. 3d 1098, 1101, 524 N.E.2d 1042; *INA Insurance Co. v. City of Chicago*, 62 Ill. App. 3d at 84-85; *Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 920-21, 364 N.E.2d 337; *International Harvester Co. v. Continental Casualty Co.* (1962), 33 Ill. App. 2d 467, 472-73, 179 N.E.2d 833.)[2] Mid-Century's reliance on *City of Chicago v. United States Fire Insurance Co.* (1970), 124 Ill. App. 2d 340, 343, 260 N.E.2d 276, moreover, is misplaced. The court there attached "no significance" to the fact the insured was a municipal corporation, only as that fact affected the insured's duty to honor its contractual obligations. The court also quoted with approval *International Harvester Co. v. Continental Casualty Co.* (1962), 33 Ill. App. 2d 467, 179 N.E.2d 833, cited above as authority for a reasonable standard which examines "all facts and circumstances" surrounding the insured's failure to notify the insurer.

■ Assuming, *arguendo*, Bonnie's youth and inexperience were excluded from consideration, the evidence nevertheless demonstrates the reasonableness of her actions. Bonnie immediately notified the insurance carrier for the automobile she drove at the time of the accident and cooperated completely with its instructions concerning the claim and the suit ultimately filed by Grasso. Her ignorance of potential coverage under a policy held by another for a car she neither owned nor operated when the accident occurred is not, under Illinois law, unreasonable. See *Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 142, 355 N.E.2d 1; *Rivota v. Kaplan*, 49 Ill. App. 3d at 920-21.

Nor does Mid-Century's argument find support in *Allstate Insurance Co. v. Hoffman* (1959), 21 Ill. App. 2d 314, 324, 158 N.E.2d 428, where the court rejected Hoffman's contention that he was unaware of

---

[2]Mid-Century maintains that Illinois decisions have found notice delays of 6 and 16 months sufficient to breach notice provisions in insurance contracts. (*Illinois Valley Minerals Cop. v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d at 299; *INA Insurance Co. v. City of Chicago*, 62 Ill. App. 3d at 83.) One of the cases cited by Mid-Century, however, emphasizes that "[a] lengthy passage of time is not an absolute bar to coverage." (See *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d at 299.) Courts focus instead on the reasonableness of the excuse offered by the insured for the delay. *Rivota v. Kaplan*, 49 Ill. App. 3d at 920.

available insurance coverage. In *Allstate,* however, the insured's ignorance was reinforced by the concurring opinion of his superior officer in the National Guard, and not by an actual insurance company and insurance defense attorney, facts critical in the instant case to the determination that Bonnie acted reasonably. Additionally, the *Allstate* court reached its conclusion without citation to authority; we elect to follow *Rivota* and *Hamilton* as representative of the actual state of Illinois law on this issue.

Grasso concedes that Mid-Century bears no burden to prove prejudice visited upon it by the insured's failure of prompt notification (see *Del Grosso v. Casualty Insurance Co.,* 170 Ill. App. 3d at 1100; *City of Chicago v. United States Fire Insurance Co.,* 124 Ill. App. 2d at 348; *Country Mutual Casualty Co. v. Van Duzen,* 351 Ill. App. at 120); however, he urges that the circuit court's finding of no prejudice to Mid-Century can be "justified on the basis of the total lack of prejudice" here and the application of the "cold trail principle." As noted here by the circuit court, James Radecki, branch claims manager for Farmers, testified that he had never stated that Mid-Century was prejudiced by the late notice and that, if presented with a claim such as the underlying cause of action, the insurer's investigation would consist of obtaining a copy of the police accident report, transcribing the statements of the insured and the injured party, and obtaining photographs of the vehicles. Furthermore, Radecki conceded that the receipt of late notice doesn't automatically mean Mid-Century is prejudiced in its attempt to defend and evaluate a claim. Interestingly, Mid-Century evidently never issued a reservation of rights letter to Bonnie in connection with the claim.

■ Mid-Century lastly contends that, even if the facts and circumstances preceding Bonnie's receipt of the summons and complaint for the underlying claim reasonably excuse her untimely notice to Mid-Century, no facts or circumstances after that date justify her tardy response. After Grasso filed his complaint against Bonnie in September 1983, Home and Auto appointed counsel, McCabe, to represent Bonnie, denying her from that point on the excuses of unsophistication and unfamiliarity with the insurance claims process, Mid-Century maintains. A client cannot escape the consequences of his counsel's negligence and is bound by the errors and omissions of his lawyer-agent. (*Danforth v. Checker Taxi Co.* (1969), 114 Ill. App. 2d 471, 476, 253 N.E.2d 114.) Where, however, as in this case, the insurer provides the insured with an attorney and assumes control over defense of the claim, the attorney's negligence may not be imputed to the insured, as no principal-agent relationship exists between them. *Petersen v. Farmers Casualty*

*Co.* (Iowa 1975), 226 N.W.2d 226, 230, citing *National Farmers Union Property & Casualty Co. v. O'Daniel* (9th Cir. 1964), 329 F.2d 60, 65; *Attleboro Manufacturing Co. v. Frankfort Marine, Accident & Plate Glass Insurance Co.* (1st Cir. 1917), 240 F. 573, 581.

▮ Bonnie's testimony in the case *sub judice* indicated Home and Auto supplied her with counsel for the underlying claim in that McCabe contacted Bonnie after she forwarded Grasso's summons and complaint to the insurance company and she identified him at trial as the "lawyer representing [her] from Home and Auto." Furthermore, McCabe told Bonnie "he would take care of it," not to discuss the case with anyone, and to forward all pertinent documents to him. Coupled with appellant counsel's admission at oral argument that Bonnie did not retain McCabe and that she could neither direct the conduct of her defense nor fire him, we clearly cannot impute to Bonnie any negligence which may or may not have occurred in the course of McCabe's representation.

▮ No doubt, absent conflicting interests, the attorney's duty of loyalty to the insured is no less compelling than the duty owed the insurance company (*Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 137, 479 N.E.2d 988), yet the essence of agency is control, and where the purported principal lacks control over the putative agent, no agency exists. *Morgan v. Kobrin Securities, Inc.* (N.D. Ill. 1986), 649 F. Supp. 1023, 1032.

Decisions cited by Mid-Century are inapposite. In both *Pawtucket Mutual Insurance Co. v. Dolby* (D. Mass. 1969), 305 F. Supp. 703, and *Hawkeye-Security Insurance Co. v. Davis* (8th Cir. 1960), 277 F.2d 765, the court recognized applicability of the law of agency to the lawyer-client relationship, but never extended the principle to an attorney hired by an insurer to defend a suit brought against an insured.

The court did not err in finding Mid-Century obligated to defend and, if necessary, indemnify Bonnie pursuant to the policy.[3]

For the reasons stated herein, we affirm.

Affirmed.

BILANDIC and SCARIANO, JJ., concur.

---

[3]Counsel for Mid-Century noted at oral argument that Bonnie "will never face an excess judgment in this case," citing correspondence attached to Mid-Century's reply brief. These documents do not appear in the record on appeal, however, and therefore are beyond our consideration. *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1977), 52 Ill. App. 3d 90, 95, 367 N.E.2d 173.