SEARS, ROEBUCK AND COMPANY, Plaintiff-Appellant, v. SENECA IN-
SURANCE COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 1—92—1492

Opinion filed September 28, 1993.

Arnstein & Lehr, of Chicago (Arthur L. Klein, Hal R. Morris, and James M. Rooney, of counsel), for appellant.

Brinton & Fedota, of Chicago (John D. Kuhn and Stephen C. Prout, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The present appeal is the second time we have had this case before us. In the first appeal, we reversed the trial court's grant of summary judgment in favor of defendant Seneca Insurance Company. On remand, the trial court again granted summary judgment in defendant's favor, and plaintiff Sears, Roebuck and Company appeals from that order.

Tamara Morgan notified plaintiff in 1982 that she had been injured in 1970 when a defective nightgown which she was wearing caught fire. It was not until June of 1986, however, that she informed plaintiff that the garment, which bore the serial number 29K3111F, had been purchased through plaintiff's 1968 catalogue. Morgan eventually filed a products liability action against plaintiff in October of 1986.

Plaintiff was unable to locate the manufacturer of the nightgown, Guild Lingerie of California, until June of 1987, when it was identified by a retired employee. Soon thereafter, on June 12, 1987, plaintiff requested that Guild, defendant's principal insured, defend the Morgan action. On September 9, 1987, Guild demanded that defendant undertake the defense of the action, but when defendant did not respond to Guild's request, plaintiff demanded directly of defendant that it take up the defense of the Morgan action. Defendant ultimately denied coverage

because plaintiff could not establish the existence of the policy, and because plaintiff did not provide it with timely notice of Morgan's injury. It is undisputed that neither party could locate either the original policy or a copy thereof.

Plaintiff filed suit against defendant on April 13, 1988, seeking a declaratory judgment that defendant had a duty to defend it against Morgan's complaint. While that action remained pending, plaintiff prevailed in the case Morgan brought against it; consequently, plaintiff changed the relief sought against defendant to that of seeking damages in the amount of the cost of its successful defense. Defendant reiterated in its answer that it had no duty to defend plaintiff because it could not satisfy its burden of establishing that a policy covering it existed, and even if it could do so, plaintiff did not comply with the policy's provision requiring timely notice of Morgan's injury.

Both parties filed motions for summary judgment. In support of its motion, plaintiff produced a certificate of insurance and a vendor's endorsement issued by Eagle Star Insurance Company (Eagle Star), through Eagle Star's agent, Craven, Dargan & Company (Craven), defendant's predecessor. Defendant supported its motion by including a statement of policy language which it alleged to be standard in all policies, and which stated that a claimant must inform its insurer of accidents "as soon as practical" after they occur. Circuit Court Judge Robert L. Sklodowski ruled that the certificate and endorsement were sufficient evidence that plaintiff was covered under a policy issued by defendant to Guild, but that plaintiff was not entitled to recovery "on the basis of late notice" of the accident to defendant. Accordingly, the trial court entered summary judgment in favor of defendant.

We reversed in an unpublished order. (*Sears, Roebuck & Co. v. Seneca Insurance Co.* (1990), 207 Ill. App. 3d 1111, 604 N.E.2d 383 (unpublished order under Supreme Court Rule 23).) We noted that the only evidence in the record of a late-notice provision in the policy was a statement in defendant's answer that " 'the late notice provision is a standard clause in the policies issued by [defendant],' " as well as a statement contained in an Illinois Continuing Legal Education handbook to the effect that most insurance policies contain late-notice provisions which require an insured to notify its insurer of a covered accident as soon as practical. We held that such evidence was insufficient to justify the entry of summary judgment, stating that "defendant must produce some admissible evidence, not just the pleadings, to demonstrate the existence of a notice clause in the insurance contract." Accordingly, we remanded the cause to the circuit court for further proceedings not inconsistent with the views expressed in our order.

On remand, both parties again moved for summary judgment. In support of its motion, defendant offered the affidavit of Robert Towney, who was the managing underwriter in the Los Angeles office of Craven,[1] defendant's predecessor and the company which underwrote all general comprehensive liability (GCL) policies for Eagle Star, the insurer which issued the policy in question to Guild. Attached to Towney's affidavit was a specimen GCL policy, which he stated was the only standard GCL policy used by Craven between 1962 and 1973. Towney confirmed that the specimen GCL policy contained a late-notice provision.[2]

Plaintiff included the deposition testimony of Towney in support of its motion for summary judgment. Towney testified that since he had no recollection whatsoever of the policy in question being issued, he could not say for certain that it included the late-notice provision set forth in the specimen policy. He also stated that while it was likely that the policy was issued out of the Los Angeles office, since that is where Guild's home office was located, he could not rule out the possibility that one of Craven's several other offices on the West Coast actually wrote the policy. He further stated that while it would have been unusual for Craven to issue a GCL policy other than its standard form, he could not say for certain that the policy issued to Guild was a handwritten, or "manuscript," policy. Towney also related that he located a standard form amendment, or "endorsement," to the policy issued to Guild which contained the notation "END.#13," which Towney explained meant that there were at least 12 other endorsements to the policy. He further stated that while he did not remember ever using an endorsement to delete a late-notice provision in a policy, such was theoretically possible, since any term in a policy could have been changed or deleted by an endorsement.

---

[1] Although the affidavit does not specify that Towney was the underwriter for only the Los Angeles office of Craven, he later clarified that fact during his deposition offered by plaintiff in support of its motion for summary judgment.

[2] The notice provisions in the specimen policy state as follows:

"Notice of Accident: When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the insured and of available witnesses.

Notice of Claim or Suit: If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

After hearing argument, circuit court Judge Monica Reynolds issued a memorandum of opinion granting defendant's motion for summary judgment, finding as a matter of law that the specimen policy and deposition testimony of Towney established that the policy issued to Guild contained the late-notice provision found in the specimen; which implies, of course, that not only was there a policy but that it contained the late-notice provision and that plaintiff's notice to defendant was in fact late. Plaintiff filed a timely notice of appeal from that judgment.

## I

Plaintiff first argues that on remand, the trial court misinterpreted our mandate when it granted summary judgment in defendant's favor because defendant still failed to introduce competent evidence which conclusively demonstrated the existence of a late-notice clause in the policy. Defendant disagrees, arguing that the combination of the specimen policy and Towney's deposition is sufficient evidence that the policy issued to Guild contained a late-notice provision.

The scope of this court's review of a grant of summary judgment is by this time well settled. The purpose of summary judgment is to determine whether there exist any genuine issues of triable fact. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Although our supreme court has encouraged the use of the summary judgment procedure as an aid in the expeditious disposition of a lawsuit (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871), it has also emphasized that the device is a drastic means of disposing of litigation and should be used only when the right of the moving party is clear and free from doubt. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215.

Because it is such a severe measure, a motion for summary judgment should be granted only when the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue of material fact and that, accordingly, the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 508, 584 N.E.2d 104, 112.) A genuine issue of material fact exists not only when the facts are in dispute, but also where reasonable persons could draw different inferences from undisputed facts (*Loyola Academy*, 146 Ill. 2d at 272, 586 N.E.2d at 1215); therefore, summary judgment is proper only where undisputed facts admit but one reasonable inference. *Meyer v. Cohen* (1993), 260 Ill. App. 3d 351, 359; *In re Estate of Jessman* (1990), 197 Ill. App. 3d 414, 419, 554 N.E.2d 718, 720.

The burden of establishing that no genuine issue of material fact exists is on the moving party (*Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 119, 469 N.E.2d 1379, 1387); and in determining whether the moving party has met that burden, the trial court must construe all of the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. (*Loyola Academy*, 146 Ill. 2d at 271, 586 N.E.2d at 1215; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Because we review summary judgments *de novo* (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 411 N.E.2d 229; *Polak v. Person* (1992), 232 Ill. App. 3d 505, 509, 597 N.E.2d 810, 812), we must scrutinize the facts which were before the trial court in order to determine whether its grant of summary judgment was proper.

Plaintiff in the instant case does not contest the basic principle that under certain circumstances, a party may use secondary evidence to establish the existence of the terms of a lost writing. The best or secondary evidence rule provides that in order to establish the terms of a writing, the original must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 203, 494 N.E.2d 634, 652, *aff'd* (1987), 118 Ill. 2d 23, 514 N.E.2d 150.) To introduce secondary evidence of a writing, the proponent must show: (1) the prior existence of the original; (2) the loss, destruction or unavailability of the original; (3) the authenticity of the substitute; and (4) its own diligence in attempting to procure the original. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 199, 246 N.E.2d 269, 273; *Rybak v. Provenzale* (1989), 181 Ill. App. 3d 884, 890-91, 537 N.E.2d 1321, 1325, *appeal denied* (1989), 127 Ill. 2d 641, 545 N.E.2d 130; *Zurich*, 145 Ill. App. 3d at 203, 494 N.E.2d at 652; *Caudill v. Beil* (1984), 127 Ill. App. 3d 847, 851, 469 N.E.2d 257, 260; *Lam v. Northern Illinois Gas Co.* (1983), 114 Ill. App. 3d 325, 332, 449 N.E.2d 1007, 1010-11.) Plaintiff here complains that the third prong of this test was not satisfied, arguing that defendant has not clearly established that the specimen policy and the late-notice provision found therein are authentic representations of the terms of the policy actually issued to Guild.

We agree with the plaintiff. It is clear that reasonable minds could draw different conclusions from the facts which were before the trial court. Looking at Towney's deposition testimony in the light most favorable to plaintiff, it is clear that it would take a fact finder to conclude whether or not defendant can establish by a preponderance of the evidence that the late-notice provision was contained in the policy, be-

cause Towney stated that it was possible that: (1) the policy was issued from a Craven office located in a city other than Los Angeles where he was the underwriter; (2) the policy was a manuscript policy entirely different from the specimen which he introduced; or (3) that one of the 13 or more endorsements to the policy deleted or materially altered the late-notice provision contained in the specimen. Contrariwise, a fact finder could just as easily conclude from Towney's deposition testimony that the policy issued to Guild did in fact include a late-notice provision identical to the one found in the specimen. Accordingly, because the facts in this case do *not* lead to only one reasonable conclusion, we hold that summary judgment on the issue of whether the policy included a late-notice provision was inappropriate.

## II

Plaintiff further argues that even assuming that a late-notice provision was included in the policy, the trial court erred in finding as a matter of law that its notice to defendant of the Morgan action was unreasonably late.

■ A provision calling for notice "as soon as practicable" requires notification to the insurer within a reasonable time. (*State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 431, 583 N.E.2d 547, 551.) The question of whether notice was given within a reasonable time is one of fact, unless there is no controversy as to the facts, in which case the issue becomes one of law. (*American Family Mutual Insurance Co. v. Blackburn* (1991), 208 Ill. App. 3d 281, 288, 566 N.E.2d 889, 894, *appeal denied* (1991), 139 Ill. 2d 593, 575 N.E.2d 911; *Grasso v. Mid-Century Insurance Co.* (1989), 181 Ill. App. 3d 286, 289, 536 N.E.2d 977, 979; *Fletcher v. Palos Community Consolidated School District No. 118* (1987), 164 Ill. App. 3d 921, 927, 518 N.E.2d 363, 367.) Whether notice was given within a reasonable time is dependent on all of the facts and circumstances of each individual case (*State Security Insurance Co.*, 145 Ill. 2d at 431, 583 N.E.2d at 551; *Grasso*, 181 Ill. App. 3d at 289, 536 N.E.2d at 979), and our court has looked to the following factors in order to determine whether an insured has acted within a reasonable time in giving notice: (1) the presence or absence of the insured's sophistication in the world of commerce and insurance; (2) awareness on the part of the insured that an occurrence as defined by the policy has taken place; and (3) once awareness has taken place, the diligence with which the insured ascertains whether policy coverage is available. (*American Family Mutual Insurance Co.*, 208 Ill. App. 3d at 288, 566 N.E.2d at 894.) Moreover, while prejudice to an insurer as a result of the late notice is a factor which the court may consider, the

absence thereof does not excuse an insured's tender of late notice. *American Family Mutual Insurance Co.*, 208 Ill. App. 3d at 288, 566 N.E.2d at 894; *Grasso*, 181 Ill. App. 3d at 290, 536 N.E.2d at 979; *Fletcher v. Palos Community Consolidated School District No. 118* (1987), 164 Ill. App. 3d 921, 927-28, 518 N.E.2d 363, 367.

■ In the case *sub judice*, we find that a genuine issue of fact exists as to whether the notice to defendant given by plaintiff was given "as soon as practicable," as required by what defendant contends to be the policy provision covering the Morgan incident. The record reflects that plaintiff was not provided with the serial number of the allegedly defective garment until June of 1986 and that plaintiff was not able to determine that Guild was the manufacturer until June of 1987 when a retired employee identified it as such. It is unclear from the record, however, what measures plaintiff took during that one-year period in order to discover who manufactured the garment in question, and we are without any reasons given by the trial court as to why it found as it did on this issue. Then, too, both parties appear to have had great difficulty in ascertaining the existence of a policy because of the unusual length of time that transpired between Morgan's injury and plaintiff's being notified thereof and its being able later to discover the identity of the manufacturer of the garment, a lapse of time explained by Morgan's having been but a toddler at the time of her accident. She apparently did not bring suit until after she had attained her majority. Consequently, we hold that the question of whether plaintiff's tender of notice of the Morgan action to defendant was unreasonably late under the circumstances of this case was one that does not lend itself to a summary judgment proceeding, but is rather for a fact finder to determine; accordingly, we hold that the trial court's grant of summary judgment on that issue was improper.[3]

### III

■ Plaintiff finally contends that defendant should be estopped from denying coverage, pointing to the general rule that:

---

[3]Defendant's argument that plaintiff is precluded from relitigating this issue under the doctrine of the law of the case is meritless, for we did not address the issue of whether plaintiff's notice was untimely in our previous order, and it is axiomatic that "merely presenting an issue to an appellate court does not foreclose relitigating questions of fact and matters concerning the merits of the controversy which the appellate court did not decide." *People ex rel. La Salle National Bank v. Hoffman Estates Park District* (1992), 236 Ill. App. 3d 569, 572, 603 N.E.2d 836, 838, *appeal denied* (1993), 148 Ill. 2d 653, 610 N.E.2d 1275.

"an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy which includes a duty to defend may not simply refuse to defend the insured. Such insurer must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, and is subsequently found to have wrongfully denied coverage, it is estopped from later raising policy defenses to coverage." (*Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 207-08, 579 N.E.2d 322, 335.)

Plaintiff argues that since defendant did not seek a declaratory judgment or defend the Morgan action under a reservation of rights, it is estopped from arguing that it had no duty to defend the action.

We disagree. In *Village of Melrose Park v. Nautilus Insurance Co.* (1991), 214 Ill. App. 3d 864, 574 N.E.2d 198, we rejected an argument identical to plaintiff's, stating:

"Although the [insured] brought the declaratory judgment action, [the insurer] actively sought, through a motion for summary judgment, an adjudication of its rights and duties. That the [insured] brought the action is irrelevant; it is the fact of the declaratory judgment that is of legal import, and not the identity of the party initiating the proceeding." *Village of Melrose Park*, 214 Ill. App. 3d at 867, 574 N.E.2d at 199.

Accord *Louis Marsch, Inc. v. Pekin Insurance Co.* (1985), 140 Ill. App. 3d 1079, 1083, 491 N.E.2d 432, 436; *Ayres v. Bituminous Insurance Co.* (1981), 100 Ill. App. 3d 33, 35 n.1, 424 N.E.2d 1316, 1318 n.1.

In the case at bar, plaintiff brought the declaratory judgment action against defendant to determine the issue of coverage, and defendant "actively sought, through a motion for summary judgment, an adjudication of its rights and duties." The fact that plaintiff initiated the declaratory judgment action is irrelevant, and its estoppel argument must therefore fail.

For all of the foregoing reasons, we reverse the trial court's entry of summary judgment in favor of defendant, and we remand the cause for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

McCORMICK, P.J., and HARTMAN, J., concur.