MILLERS MUTUAL INSURANCE ASSOCIATION OF ILLINOIS, Plaintiff-Appellant, v. GRAHAM OIL COMPANY *et al.*, Defendants-Appellees (Robert Wills *et al.*, Intervening Defendants-Appellees).

Second District   No. 2—95—1054

Opinion filed July 9, 1996.

Michael Resis and Mark W. Zimmerman, both of Querrey & Harrow, Ltd., for appellant.

James P. O'Brien and Kathleen L. Nooney, both of Chapman & Cutler, of Chicago, for appellees Eugene Graham and Graham Oil Company.

Cornelius Francis Riordan and Marc S. Lipinski, both of McNeela & Griffin, Ltd., of Chicago, for appellee Pioneer Insurance Agency, Inc., Carol Wills, and Robert Wills.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Millers Mutual Insurance Association of Illinois (Millers Mutual), brought this declaratory action seeking a determination that it was not obligated to defend or indemnify the defendants, Graham Oil Company (Graham Oil) and Eugene Graham (Graham), in connection with a lawsuit brought by the intervening defendants, Robert Wills, Carol Wills (collectively, the Willses), and Pioneer Insurance Agency (Pioneer), for damages arising out of the escape of gasoline from underground storage tanks located on business premises owned by Graham and operated by Graham Oil (the Graham property). On cross-motions, the trial court granted Graham Oil judgment on the pleadings pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1994)), find-

ing that Millers Mutual owed both a duty to defend and a duty to indemnify Graham Oil in the underlying suit. Millers Mutual timely appealed.

At issue on appeal is the scope of the pollution exclusion contained in the commercial general liability (CGL) policies issued by Millers Mutual. Specifically, we must examine (1) whether gasoline is a "pollutant" within the meaning of the pollution exclusion; (2) whether the pollution exclusion operates to deny coverage for any damages resulting from the release of gasoline from underground storage tanks on Graham Oil's business premises; and (3) whether the underlying complaint's allegations of environmental contamination, brought under theories of trespass and nuisance, are sufficient to bring the complaint within, or potentially within, the policies' coverage for "personal injury." In addition, we must determine whether the trial court's grant of judgment on the pleadings in favor of Graham Oil on both the duty to defend and the duty to indemnify was proper. For the reasons which follow, we affirm in part, reverse in part, and remand.

The Willses and Pioneer filed their initial complaint in the underlying suit on August 17, 1993, and their first amended complaint on October 26, 1993. The complaint alleged, *inter alia*, that on or before October 31, 1991, a "sudden and calamitous spillage of a large quantity of gasoline" from the underground storage tanks on the Graham property caused a substantial portion of the subsoil on the Willses' property to be permeated and saturated with gasoline. They alleged further that the migration of the gasoline from the Graham property resulted in the severe pollution and contamination of their property, requiring corrective action to restore the parcel to the condition which existed prior to the spillage. The complaint also alleged that the Willses and their tenants noticed noxious and offensive gasoline odors on the parcel as a result of the spillage which led to their temporary evacuation of the parcel, causing the Willses bodily injury and emotional distress and resulting in loss of revenue and business opportunity to Pioneer. In addition, the Willses claimed that the contamination of the property resulted in a loss of rents and profits, loss of tenants, and diminution in value of their parcel. As against Graham Oil, the amended complaint sought recovery under various theories, including strict liability, trespass, nuisance, and negligence.

On March 7, 1994, Millers Mutual filed the instant declaratory action against Graham and Graham Oil, seeking a determination that it owed no liability coverage to the defendants in connection with the underlying lawsuit under three of its annual CGL policies,

effective from April 10, 1989, to April 10, 1992. In particular, Millers Mutual alleged that (1) no coverage was afforded to Graham individually, as he was not a named insured under the policies; (2) no "bodily injury" or "property damage," as defined in the policies, occurred during the policy period; (3) the underlying plaintiffs' claims against Graham Oil were not for "property damage" but for economic losses, for which no coverage was provided; (4) the policies' absolute pollution exclusion excluded all of the underlying claims from coverage; and (5) Graham Oil failed to comply with conditions precedent to coverage by its failure to timely notify Millers Mutual of the alleged spillage.

In their answer, the defendants admitted tendering the defense of the underlying complaint to Millers Mutual on November 8, 1993, but denied that any spillage of gasoline had occurred on October 30, 1991. Following the trial court's grant of their motion for leave to intervene as defendants in the declaratory action, the Willses and Pioneer filed an answer admitting the spillage of the gasoline but denying the allegations as to noncoverage. The intervenors, like the other defendants, also sought dismissal of the declaratory action.

On August 5, 1994, Millers Mutual filed its motion for judgment on the pleadings based on the policies' pollution exclusion. Thereafter, Graham Oil filed its cross-motion for judgment on the pleadings. As in its response to Millers Mutual's motion, Graham Oil argued that gasoline could not be considered a "pollutant" within the meaning of the pollution exclusion, making such exclusion inapplicable, and that the "Garage Locations and Operations Medical Payments Coverage" endorsement afforded coverage for the injuries alleged in the underlying complaint. In addition, Graham Oil contended that the allegations of the underlying complaint fell within the "personal injury" coverage of the CGL policy, to which the pollution exclusion did not extend.

On January 11, 1995, the trial court denied Millers Mutual's motion and granted Graham Oil's cross-motion for judgment on the pleadings. At the hearing on Millers Mutual's motion for reconsideration or, alternatively, for clarification, the court stated, as to the applicability of the pollution exclusion to the discharge of gasoline, that it believed that gasoline "is a pollutant once it escapes and invades someone else's property or into a river or whatever else." The court, however, found "[an] ambiguity between the pollutant [sic] section and the personal injury section" of the policy and, in construing the policy against Millers Mutual as the drafter, reaffirmed its entry of judgment on the pleadings in favor of Graham Oil. This appeal followed.

■ We note at the outset that the purpose of a motion for judgment on the pleadings is to test the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by its complaint or, alternatively, whether the defendant by his answer has set up a defense which would entitle him to a hearing on the merits. *Granville National Bank v. Alleman*, 237 Ill. App. 3d 890, 894 (1992). The trial court must examine all the pleadings on file, taking as true the well-pleaded facts, and reasonable inferences to be drawn therefrom, set forth in the pleadings of the opposing party. *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 890 (1993). Judgment on the pleadings is proper only if questions of law, and not of fact, exist after the pleadings have been filed. *Tim Thompson*, 247 Ill. App. 3d at 890. On review, the court must determine whether any genuine issue of material fact exists and, if not, whether the prevailing party was indeed entitled to judgment as a matter of law. *In re Estate of Davis*, 225 Ill. App. 3d 998, 1000 (1992).

■ The construction of an insurance policy's provisions is a question of law. *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529 (1995). In construing the policy, the court must determine the intent of the parties to the insurance contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). To ascertain the intent of the parties as well as the meaning of the policy's words, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter insured, and the purposes of the entire contract. *Outboard Marine*, 154 Ill. 2d at 108. Ambiguities in an insurance policy will be construed in favor of the insured and against the insurer who drafted the policy. See *Outboard Marine*, 154 Ill. 2d at 108-09. However, unambiguous words in the policy—that is, words not susceptible to more than one reasonable interpretation—will be afforded their plain, ordinary, and popular meaning. See *Outboard Marine*, 154 Ill. 2d at 108. A policy term is not ambiguous because it is not defined within the policy or because the parties can suggest creative possibilities for its meaning; nor may a court read an ambiguity into the policy just to find in favor of the insured. *Lapham-Hickey*, 166 Ill. 2d at 529-30.

■ As to the duty to defend, it is well settled that an insurer's duty to defend its insured is much broader than its duty to indemnify. *Outboard Marine*, 154 Ill. 2d at 125. In determining the duty to defend, a court must compare the allegations of the underlying complaint, construed liberally in favor of the insured, to the language of the policy. See *Outboard Marine*, 154 Ill. 2d at 125. If the allegations of the underlying complaint fall within, or *potentially within*, the

coverage of the policy, the duty to defend will arise. *Outboard Marine,* 154 Ill. 2d at 125. Moreover, if the underlying complaint alleges several theories of recovery against the insured, the insurer will have a duty to defend even if only one such theory is within the potential coverage of the policy. *National Union Fire Insurance Co. v. Glenview Park District,* 158 Ill. 2d 116, 124-25 (1994).

The first policy provision at issue in the case at bar is the pollution exclusion contained in the "Bodily Injury and Property Damage Liability" sections of the three policies issued by Millers Mutual. The first two policies, in effect from April 10, 1989, to April 10, 1991, excluded from coverage bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants" at or from premises owned, rented or occupied by the insured. The policies further defined "pollutants" to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." The third policy, in effect from April 10, 1991, to April 10, 1992, modified the language of the exclusion, excluding from coverage bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants *** [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."

Graham Oil contends that the CGL policies here were designed to provide liability coverage for its gas station operations and, as such, should not be read to exclude coverage for occurrences common to the trade. It argues further that the policies' failure to specifically include gasoline, "a useful product," within the definition of "pollutant" renders the pollution exclusion at least ambiguous, requiring it to be construed against the insurer. See *American States Insurance Co. v. Kiger,* 662 N.E.2d 945 (Ind. 1996).

■ To date, no Illinois court has addressed the issue of whether gasoline constitutes a pollutant within the meaning of an insurance policy's pollution exclusion. However, a number of courts from other jurisdictions, using the same or substantially similar definitions of "pollutant," have found gasoline to be a pollutant within the meaning of the pollution exclusion. See *Riverside Oil, Inc. v. Federated Mutual Insurance Co.,* No. 94—2038 (C.D. Ill. August 19, 1994); *Union Mutual Fire Insurance Co. v. Hatch,* 835 F. Supp. 59, 65-66 (D.N.H. 1993); *Crescent Oil Co. v. Federated Mutual Insurance Co.,* 20 Kan. App. 2d 428, 435, 888 P.2d 869, 873 (1995). We believe that this interpretation comports not only with the plain, ordinary, and popular

meaning of "pollutant," but also with common sense. Although gasoline safely contained in a storage tank is a useful product, its presence in the subsoil of a neighbor's property can hardly be said to be anything but a contaminant and thus a pollutant under the terms of the policies. See *Crescent Oil*, 20 Kan. App. 2d at 431, 888 P.2d at 871-72 (gasoline escaping from its place of confinement "clearly a pollutant"); *Wagner v. Milwaukee Mutual Insurance Co.*, 145 Wis. 2d 609, 615, 427 N.W.2d 854, 857 (Wis. App. 1988) (discharge of gasoline into the ground and sewer system is clearly the discharge of a pollutant under pollution exclusion). Additionally, as the *Riverside Oil* court noted:

> "It is certainly clear that gasoline is a liquid that can be an irritant or contaminant when released and, at least, it contains chemicals if it is not one itself. The ambiguity referred to by the plaintiffs comes only from the notion that since the plaintiffs owned gas stations, the exclusion should have been more clear in stating whether or not gasoline fit the new exclusion. Although both Indiana and Illinois resolve ambiguities in favor of the insured especially where exclusions are involved, this does not authorize courts to find ambiguities where they do not exist. While the exclusion could have been more precisely drafted for its purpose, it is not ambiguous as liquid irritants or contaminants, such as gasoline, are included." *Riverside Oil*, slip op. at ____.

We therefore conclude, as did the trial court, that gasoline is a pollutant within the meaning of the policies' pollution exclusions.

■ Under the analysis posed by Millers Mutual, this determination should end our inquiry, in that the language of the pollution exclusion, construed as "absolute" by one Illinois court (see *Economy Preferred Insurance Co. v. Grandadam*, 275 Ill. App. 3d 866, 870 (1995)), should be interpreted to exclude from coverage any and all damage or injury resulting from environmental contamination. Millers Mutual contends that, although the pollution exclusion is contained only within the policies' coverage for "Bodily Injury and Property Damage Liability," its applicability should extend to the "Personal and Advertising Injury Liability" section of the policies as well. To interpret the personal injury section to provide coverage for environmental damage, the argument goes, would render the pollution exclusion a nullity, violating the court's duty to give effect to each term in the policy (see *Outboard Marine*, 154 Ill. 2d at 123 (court must strive to give each term in a policy meaning unless doing so would render the clause or policy inconsistent or inherently contradictory)) and to read the policy as a whole (see *Outboard Marine*, 154 Ill. 2d at 108).

Millers Mutual's position is not without support from numerous federal and state courts. See *O'Brien Energy Systems, Inc. v. American Employers' Insurance Co.*, 427 Pa. Super. 456, 470, 629 A.2d 957, 964 (1993) (to find coverage for environmental damage under a personal injury endorsement "would emasculate the clear and unambiguous provisions of the pollution exclusion"); *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal. App. 4th 457, 474, 27 Cal. Rptr. 2d 476, 486 (1994) (allowing recovery under personal injury coverage for damage to realty caused by environmental contamination would render the pollution exclusion "a dead appendage to the policy"); *County of Columbia v. Continental Insurance Co.*, 83 N.Y.2d 618, 628, 634 N.E.2d 946, 950, 595 N.Y.S.2d 988, 991 (1994) ("It would be illogical to conclude that the claims fail because of the pollution exclusion while also concluding that the insurer wrote a personal injury endorsement to cover the same eventuality"). Accord *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203, 209 (5th Cir. 1991); *Harrow Products, Inc. v. Liberty Mutual Insurance Co.*, 64 F.3d 1015, 1025 (6th Cir. 1995). A minority of jurisdictions, however, have found similar pollution exclusions to be limited by their plain language to bodily injury and property damage only. See *Great Northern Nekoosa Corp. v. Aetna Casualty & Surety Co.*, 921 F. Supp. 401, 408-10 (N.D. Miss. 1996); *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1042 (7th Cir. 1992).

We believe that the minority position is the better reasoned one. The language of the pollution exclusion refers only to "bodily injury" (defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time") and "property damage" (defined as either physical injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured). Bound as we are to construe exclusions strictly against the insurer and in favor of coverage (see *Outboard Marine*, 154 Ill. 2d at 119), we cannot see how we can broaden the pollution exclusion's express terms to deny coverage for personal injuries caused by pollution. To adopt the construction urged by Millers Mutual would also conflate the distinction between damage sustained by property from the discharge of pollution and damage sustained by those personal rights incidental to the ownership of property. See *Great Northern Nekoosa*, 921 F. Supp. at 410-11. As the *Great Northern Nekoosa* court noted, moreover:

"An insurance contract which contains provisions for coverage as well as exclusions naturally creates inconsistencies of coverage. To extend the sphere of an exclusion beyond its specific wording denies to the contracting parties the option of sculpting the

contract to fit the specific contours of coverage to which the parties agree. The personal injury endorsement has a separate insuring agreement, definitions, and exclusions. It stands alone and is not dependent upon or limited by coverage or exclusion provisions elsewhere in the policy. It is a fundamentally inappropriate construction of the insurance policy to apply the pollution exclusion to the personal injury endorsement." *Great Northern Nekoosa*, 921 F. Supp. at 411.

Having found the pollution exclusion inapplicable to the personal injury portion of the policies, we turn to the next issue on appeal: whether the allegations of the underlying complaint, brought under theories of trespass and nuisance, were sufficient to bring the complaint within, or potentially within, the policies' coverage for personal injury. The first two policies defined "personal injury" as:

"[I]njury, other than 'bodily injury,' arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosection;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy."

The third policy's definition of "personal injury" differed only as to the third listed offense, which was modified to include "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."

The question of whether allegations of trespass or nuisance constitute "wrongful entry" within the meaning of a liability policy's coverage for personal injury is one of first impression in Illinois. Courts which have considered the issue have, not surprisingly, followed various rationales to achieve differing results. Certain courts have reasoned that, in light of the intentional torts enumerated in the definition of "personal injury," such coverage was intended to encompass only intentional and purposeful torts not otherwise excluded. See *Gregory*, 948 F.2d at 209; *County of Columbia*, 83 N.Y.2d at 627, 634 N.E.2d at 950, 595 N.Y.S.2d at 991. Others have construed "eviction," "wrongful entry," or "invasion of the right of private occupancy" to be limited to claims relating to the usurpation of a possessory interest in property. See *Decorative Center v. Employers Casualty Co.*, 833 S.W.2d 257, 261 (Tex. Ct. App. 1992); *Whiteville Oil Co.*

*v. Federated Mutual Insurance Co.*, 889 F. Supp. 241, 247 (E.D.N.C. 1995). Still others, though a minority of jurisdictions, have found wrongful entry to be substantially analogous to trespass so as to fall within the personal injury coverage. See *Great Northern Nekoosa*, 921 F. Supp. at 417-18; *Pipefitters*, 976 F.2d at 1041. Accord *Scottish Guarantee Insurance Co. v. Dwyer*, 19 F.3d 307, 311 (7th Cir. 1994); *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 272 (1st Cir. 1990); *Blackhawk-Central City Sanitation District v. American Guarantee & Liability Insurance Co.*, 856 F. Supp. 584, 590 (D. Colo. 1994); *Riverside Oil*, slip op. at ____.

■ A trespass is an invasion in the exclusive possession and physical condition of land. *Colwell Systems, Inc. v. Henson*, 117 Ill. App. 3d 113, 116-17 (1983). In Illinois, one may be liable in trespass for causing a thing or a third person to enter the land of another either through a negligent act or an intentional act. *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 556-59 (1980). Thus, as the *Pipefitters* court recognized, one need not intend to take possession of the encroached-upon premises or deprive occupants of their right to possess those premises to have committed a trespass under Illinois law. *Pipefitters*, 976 F.2d at 1041.

Though acknowledging the above, Millers Mutual contends that trespass cannot be equated to wrongful entry because the latter is aimed at disputes over the possession of real property. As stated in *Whiteville Oil*: "While every person who wrongfully enters the property of another becomes a trespasser [citation], the converse is not true. Every trespass is not necessarily a 'wrongful entry' because to be such, there must be a threat to the owner's possessory rights in the property. This goes beyond the less involved elements of trespass which simply involve an unauthorized presence." *Whiteville Oil*, 889 F. Supp. at 247. Indeed, Millers Mutual notes that the use of the term "wrongful entries" in *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill. App. 2d 454, 468 (1966), upon which the *Pipefitters* court relied, related to the interference *under claim of right* with the defendant's use of an easement. *Wetmore*, 73 Ill. App. 2d at 467. See also *Harding v. Larkin*, 41 Ill. 413, 423-24 (1866) ("The action to recover mesne profits, is by trespass *quare clausum fregit*, and only lies after a recovery in ejectment, to recover for the damage sustained by the owner in consequence of the *wrongful entry* and occupancy of the land from the time the entry was made until the recovery is had" (emphasis added)).

Millers Mutual's construction of the term "wrongful entry" is by no means unreasonable. Yet it is equally reasonable to construe the phrase to include all trespassory invasions to real property, whether

aimed at dispossession or not. The Illinois cases referring to "wrongful entry" do not define it as a cause of action, but merely use it to characterize the unlawful nature of the trespasses therein considered. See, *e.g., Reed v. Peoria & Oquawka R.R. Co.*, 18 Ill. 403, 404 (1857) ("In actions of trespass the plaintiff may declare for a wrongful breaking and entry of his *close*, which is purely an injury to land ***" (emphasis in original)); *Wetmore*, 73 Ill. App. 2d at 468; *Harding*, 41 Ill. at 423. Nor does anything in these decisions suggest that the term "wrongful entry" should be limited solely to possessory disputes.

■ We find, therefore, that the policies' use of "wrongful entry" was at least ambiguous, requiring construction in favor of the insured (see *Outboard Marine*, 154 Ill. 2d at 108-09). Accordingly, we conclude that the facts alleged at bar, detailing the unauthorized seepage and migration of gasoline onto the property of an adjoining neighbor, were sufficient to bring the underlying complaint within the personal injury coverage of the policies. Thus, the trial court's denial of Millers Mutual's motion for judgment on the pleadings was proper.

It does not follow, however, that the trial court should have also granted Graham Oil's cross-motion. As noted above, judgment on the pleadings is proper only if the trial court is able to determine the rights of the parties from the pleadings alone. *Tim Thompson*, 247 Ill. App. 3d at 890. On appeal, Millers Mutual argues that the pleadings do not demonstrate, as a matter of law, that Graham Oil fulfilled its duty under the policy to provide notice "as soon as practicable," either of the alleged spillage or of the underlying lawsuit. Specifically, Millers Mutual notes that Graham Oil tendered the defense of the underlying complaint on November 8, 1993, over two years after the date of the alleged spillage and almost three months after the filing of the underlying complaint. In ruling on Millers Mutual's motion to reconsider, the judge below disregarded the notice argument, stating, "I don't feel that the late notice is a real valid defense. I don't feel that you have been damaged in any way and rule that the late notice, if it was late notice, didn't damage you in any way, shape or form[.]"

■ Notice of occurrence provisions in insurance liability policies are valid prerequisites to coverage (*State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431 (1991)) and should not be considered mere technical requirements for the convenience of the insurer (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App. 3d 574, 581 (1985)). A provision calling for notice "as soon as practicable," such as the one at bar, requires notice to the insurer within a reasonable time. *Sears, Roebuck & Co. v. Seneca Insurance Co.*, 254 Ill. App. 3d 686, 692 (1993). The test for the reasonableness

of the notice given is "whether any reasonably prudent person could foresee a lawsuit upon receipt of the first notice that would involve the insurer's policy and would either contact his attorney or his liability carrier." *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 7 (1993). Whether notice was given within a reasonable time is usually a question of fact and depends upon the facts and circumstances of each individual case. *Sears, Roebuck*, 254 Ill. App. 3d at 692. Where there is no controversy as to the facts, however, the issue becomes one of law. *Sears, Roebuck*, 254 Ill. App. 3d at 692.

While the absence of actual prejudice to the insurer may be a factor to be considered in determining the propriety of the notice and the diligence of the insured, it does not conclusively establish whether notice was timely. *Mitchell Buick*, 138 Ill. App. 3d at 581. Thus, the issue in a case involving late notice is not whether the insurer has been prejudiced, but, rather, whether reasonable notice has been given. *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.*, 82 Ill. App. 3d 894, 898 (1980).

■ Without determining whether Graham Oil's tendered notice was reasonable, the trial court here relied solely on a lack of prejudice to Millers Mutual in finding that the notice issue was not a valid defense. This was clearly improper. See *Mitchell Buick*, 138 Ill. App. 3d at 581. In addition, Graham Oil's denial that "a sudden and calamitous spillage of a large quantity of gasoline" from its storage tanks occurred on October 30, 1991—the "occurrence" at the heart of the underlying complaint—presents a disputed issue of fact directly related to the timeliness of the notice given, precluding the entry of judgment on the pleadings in favor of Graham Oil on both the duty to defend and the duty to indemnify.

For the foregoing reasons, the circuit court of McHenry County's denial of Millers Mutual's motion for judgment on the pleadings is affirmed; its granting of Graham Oil's motion for judgment on the pleadings as to Millers Mutual's duty to defend and indemnify is reversed; and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

McLAREN, P.J., and HUTCHINSON, J., concur.