(No. 28746.—

Mary Scott *et al.*, Appellants, *vs.* Freeport Motor Casu-
alty Company of Freeport, Illinois, Appellee.

*Opinion filed November 21, 1945—Rehearing denied Jan. 16, 1946.*

334

Franklin J. Stransky, of Chicago, and George Spitz, of De Kalb, for appellants.

Burrell & Burrell, of Freeport, and Henry C. Warner, of Dixon, (David M. Burrell, of Freeport, of counsel,) for appellee.

Mr. Justice Murphy delivered the opinion of the court:

This cause comes to this court from the Appellate Court on an order granting leave to appeal. The action is upon an automobile insurance policy issued by defendant to Bernard Eden. During the period covered by the policy, Eden's automobile, while being driven by him, collided with an automobile driven by plaintiff Fred Scott. Scott

and his wife were in their automobile and both sustained injuries. They instituted suits against Eden to recover damages arising out of his negligent acts. Defendant appeared in such actions by counsel and defended Eden. A jury trial resulted in verdicts of $5000 for Mary Scott and $2250 for Fred Scott. Judgments were entered on the verdicts. They were not paid, and after executions were returned unsatisfied, the Scotts started this suit in the circuit court of Lee county on the Eden policy to recover the amount of their judgments from the defendant.

The policy contained a provision, as required by the statute then in force, (Ill. Rev. Stat. 1935, chap. 73, par. 466(1), p. 1915,) which gave plaintiffs the right to maintain the action in their own names. A trial by jury resulted in a verdict for defendant. Plaintiffs' motion for a new trial was allowed. Thereafter, the Appellate Court granted defendant leave to appeal from the order granting a new trial. That court reversed the order granting a new trial but did not remand the cause. It directed that judgment be entered on the verdict. 310 Ill. App. 421.

The cause then came to this court by writ of error. In the order entered, the Appellate Court had assumed to exercise a power which was original and not of appellate jurisdiction. This presented a constitutional question which arose for the first time in the Appellate Court. Previous decisions of this court had held that Appellate Courts have no original jurisdiction and from this principle it was considered the Appellate Court had exceeded its jurisdiction in ordering judgment to be entered on the verdict. Accordingly, the cause was remanded to the Appellate Court with instructions to remand the cause to the trial court so that the court of original jurisdiction might enter judgment on the verdict. (379 Ill. 155.) The opinion of this court contained the observation that the language of section 77 of the Civil Practice Act, which is the statute that authorizes appeals from an order granting a new trial,

was so limited that this court could not pass on any question concerning the correctness of the ruling of the Appellate Court reversing the order of the trial court granting a new trial.

In the procedure which followed, the cause reached the circuit court and was redocketed. That court entered an order overruling the motion for a new trial. Plaintiffs filed objections in opposition to such order but they are not involved here. Before judgment was entered plaintiffs moved in arrest. The propriety of the order allowing such motion furnishes the subject matter of this appeal.

The grounds alleged in support of the motion in arrest were that the affirmative defenses pleaded by defendant did not set forth a defense in bar of the action stated in plaintiffs' amended complaint. It was also alleged that the insufficiency of defendant's affirmative defenses resulted in the submission of an issue to the jury which was not determinative of defendant's liability under the policy or of plaintiffs' rights, and that the verdict was a nullity. The circuit court granted the motion in arrest and ordered that all pleadings commencing with defendant's affirmative answer and defenses should be repleaded. Defendant elected to stand by its original answer and affirmative defenses. It sought to sustain the verdict returned in its favor on the first trial and did not comply with a rule to plead. It was defaulted and the cause came on for hearing, before a jury without defendant's participation. A verdict in favor of plaintiffs was returned and judgments entered thereon. Shortly after the judgments had been entered, defendant moved to set them aside, to vacate the order of default, and to enter judgment for defendant on the verdict returned on the first trial. Defendant's motion was overruled. On appeal to the Appellate Court, the order granting the motion in arrest was reversed and the cause remanded to the trial court with directions to over-

rule such motion. (324 Ill. App. 529.) This appeal followed.

At the common law, and by the practice which prevailed in this State prior to the enactment of the Civil Practice Act, a motion in arrest of judgment was generally considered as being available only to defendants. One of the main objectives of the Civil Practice Act is to simplify procedure in civil cases and to reduce, to the lowest possible number, the issues upon which evidence is to be introduced. Strict adherence to the statute may, as in this case, present a single issue, being that which is raised on defendant's affirmative defenses. In such a case, the motion in arrest should be available to a plaintiff to test the sufficiency of the defense pleaded as affirmative matter.

Paragraph (2) of section 74 of the Civil Practice Act, (Ill. Rev. Stat. 1943, chap. 110, par. 198,) directs that for the purpose of determining what is properly before a reviewing court, all distinctions between the common-law record, the bill of exceptions and the certificate of evidence are abolished, and that a court on appeal may consider for all purposes all matters in the trial court record which have been properly authenticated. The authenticated transcript in this case includes those matters which were formerly considered as forming the common-law record, the evidence introduced on both trials, and the given and refused instructions. The question is whether, in determining the correctness of the order allowing the motion in arrest of judgment, any consideration should be given to any part of the authenticated record other than that to which motions in arrest were limited prior to the enactment of the Civil Practice Act.

It was well established under the former practice that a motion in arrest of judgment was limited to those errors which appeared on the face of the record, (*Comrs. of Fountainhead Drainage Dist.* v. *Wright,* 228 Ill. 208,) and,

in considering such a motion, the court could not look into the evidence. (*Danley* v. *Hibbard,* 222 Ill. 88.) In the latter case it was said: "In considering a motion in arrest of judgment the court does not look into the evidence. The motion for a new trial is based upon the evidence, instructions and rulings of the court, which can only be made a part of the record by a bill of exceptions, while a motion in arrest of judgment is based upon the record proper." In the *Wright case* it was said that a judgment is never arrested except for intrinsic cause appearing on the face of the record, and it must be a defect that cannot be waived, and the record must show that there is no substantial cause of action. If the act is so construed, the distinction between questions properly raised on a motion in arrest of judgment and those which may be presented on a motion for a new trial will be preserved. Any other construction would lead to confusion as to the questions to be raised by the respective motions.

As sweeping as the statute is in abolishing the differences which previously existed between the record, bill of exceptions, and certificate of evidence, we do not believe it was intended that a court of review in considering questions arising on the allowance of a motion in arrest should look to all matters included in the authenticated transcript. The function of a motion in arrest of judgment as it existed prior to the adoption of the Civil Practice Act is recognized in section 56 of the act. (Par. 180.) It provides that when judgments are arrested for any defect in the record after the first process, the plaintiff shall not be required to commence his action anew but the court shall order a repleader commencing with the error which caused the arrest. The word "record" as used in this section evidently refers to the kind of a record to which motions in arrest of judgment were previously restricted and was not intended to include everything that might be authenticated and filed as a record under paragraph (2) of section 74.

(Par. 198.) In considering the motion in arrest the inquiry will be limited to matters appearing on the record as that term was applied under the former practice, and any reference in the briefs to the evidence or instructions will not be given consideration.

The pleadings in a case have always been considered as a part of the record, (*Comrs. of Fountainhead Drainage Dist.* v. *Wright,* 228 Ill. 208; *Zimmerman* v. *Cowan,* 107 Ill. 631;) and section 36 of the Civil Practice Act (par. 160) declares that an exhibit attached to and made a part of the complaint is to be treated as a part of the pleading. The questions raised by plaintiffs' motion in arrest must be determined from an examination of plaintiffs' amended complaint, defendant's answer including its affirmative defenses and plaintiffs' reply thereto.

The allegations of the amended complaint which contained the elements making plaintiffs' cause of action were admitted by defendant's answer, but defendant sought to avoid the legal effect of such admissions by pleading affirmative defenses. In general such affirmative matter was that Eden's policy had been issued on a special rate in consideration that he would continue for the term of the policy his occupation as a farmer, and that after the policy was issued his occupation was changed which, by the terms of the policy, caused a forfeiture.

On the face of the policy, under the heading "warranties," were certain answers, the pertinent parts of which were that the motor vehicle described would be used for the following purposes, only, *"business and pleasure,"* and that the assured's occupation or business was farming. The "special farmer endorsement" attached to the policy was as follows: "In consideration of the reduced premium for insurance protection against the hazards specifically designated and covered by this policy, it is a condition of said insurance that the named Assured must reside on a farm outside the limits of any village, town or city, and

shall engage in no occupation other than farming throughout the term for which this policy is issued. In the event the named Assured, without the written consent of the Company endorsed hereon, changes his occupation or his place of residence or if the herein described motor vehicle is used for any other purpose other than ordinary farm and/or pleasure purposes, or if the Assured violates any condition of this insurance or knowingly permits the violation of any such condition, then this policy shall cease automatically and immediately become null and void."

The pertinent allegations of the complaint are that defendant issued the policy to Eden, that the premium was paid, that plaintiffs recovered judgments against Eden for damages caused by Eden's negligent acts in the operation of the automobile described in the policy, that defendant had notice of the accident and of plaintiffs' injuries and that proof of loss had been made by Eden. By an amendment to the complaint, the allegation was added that plaintiffs, and each of them, had duly performed all the conditions therein on their part to be performed. Later, a second amendment added "that all conditions precedent in said contract have been fully performed." The latter amendment included conditions precedent to be performed by Eden. These several allegations contained the essentials of a *prima facie* case. (*Benes* v. *Bankers Life Ins. Co.* 282 Ill. 236; *Continental Life Ins. Co.* v. *Rogers,* 119 Ill. 474.) Defendant admitted all of them except the one relating to the performance of the conditions precedent. As to such allegation, defendant answered that plaintiffs had no conditions precedent to perform and that Eden had not performed the conditions required to be kept by him, in that he was guilty of one or more of the following violations of the policy, (a) that at the time of the accident he was driving the automobile "on a trip taken for the purpose of selling cattle or livestock in said Eden's capacity as salesman for the Morris Cattle Company;"

(b) that after the policy was issued to Eden "and before the said accident the said Eden was employed by the Morris Cattle Company and acted for said Morris Cattle Company in the capacity of salesman, whereby the said policy of insurance became wholly void and of no force and effect." The foregoing appeared in the answer and was also pleaded as affirmative defenses in paragraphs II and III. A further affirmative defense was that Eden was injured in the accident and after it occurred Eden claimed compensation under the Workmen's Compensation Act as an employee of the Morris Cattle Company, and that the cattle company's insurance carrier had paid him $192.85 in full settlement of such claim. Plaintiffs' motion to strike the principal allegations of the latter affirmative defense was overruled. Plaintiffs' reply to the workmen's compensation claim as pleaded in paragraph IV was that they had no knowledge as to such payment but as to all other matters pleaded affirmatively the reply made specific denial.

It will be noted that defendant's defense, pleaded as affirmative matter in avoidance of its liability, was that Eden had violated the provision of the "special farmer endorsement," that is, that "it is a condition of said insurance that the named assured must reside on a farm outside of the limits of a village, town, or city, and shall engage in no occupation other than farming." The breach pleaded is limited to the provision of Eden's engagement in the occupation of farming. The affirmative defenses are construed as pleading that a breach of the condition occurred after the policy was issued. Subdivision (b) of subparagraph 5 of paragraph I, and paragraph III of the answer fix the time of the breach as occurring "after the issuance of said alleged policy of insurance by the Freeport Motor Casualty Company, defendant, and after its receipt by the said Bernhard Eden, and before the said accident," etc. By such pleading defendant construed the condition in the special endorsement as in the nature of a condition

subsequent rather than as a condition precedent to be performed by Eden. The burden of pleading and proving such a defense rested on defendant. It will be observed that the endorsement provided that a breach forfeited the policy.

It is well settled that a defense which operates as a forfeiture of the policy, such as arises by failure to pay premium subsequent to the first and other such conditions subsequent, must be alleged and proved by the defendant insurance company. *Benes* v. *Bankers Life Ins. Co.* 282 Ill. 236; *Helm* v. *Commercial Mens' Ass'n,* 279 Ill. 570; *Modern Woodmen of America* v. *Davis,* 184 Ill. 236; *Continental Life Ins. Co.* v. *Rogers,* 119 Ill. 474.

In the further discussion of the affirmative defense, reference to the compensation claim of Eden will be deferred until later. The question now is as to what constituted a violation of the policy and did the facts pleaded by defendant as affirmative defense contain the essential elements which, if proved, would forfeit the policy?

The condition contained in the special endorsement was that Eden should engage "in no occupation other than farming." Defendant's affirmative defense was that before and at the time of the accident "Eden was employed by the Morris Cattle Company in the capacity of salesman whereby the policy became forfeited." Was the allegation that Eden was employed in the capacity of salesman for the cattle company the equivalent of an allegation that Eden was at the time of the accident engaged in an occupation other than farming? If it was, then the affirmative defenses set forth a defense which, if proved, would operate to forfeit the policy. Webster's New International Dictionary defines "occupation," when employed in the sense of employing one's time, as that which occupies or engages the time and attention; the principal business of one's life, vocation, business. In *Union Mutual Accident Ass'n* v. *Frohard,* 134 Ill. 228, it was held that the word

"occupation" as used in the bylaws of the defendant insurance company referred to the vocation, profession, trade or calling which the assured engaged in for hire or profit and not as precluding him from the performance of acts and duties which are the incidents connected with the daily life of men. It was held that the assured, a hardware merchant, had not changed his occupation by going on a hunting trip in the course of which he was injured.

In 46 C. J. 897, the substance of the definition of the word "occupation" given in the *Frohard case* is adopted. It concludes, "Thus it has been said that occasional acts will not constitute an occupation." *Borovicka* v. *Bankers Indemnity Ins. Co.* 289 Ill. App. 51; *Hess* v. *Preferred Mason Mut. Accident Ass'n,* 112 Mich. 196, 70 N.W. 460; *Holliday* v. *American Mut. Accident Ass'n,* 103 Iowa, 178, 72 N.W. 448; *North America Life & Accident Ins. Co.* v. *Burroughs,* 69 Pa. St. 43.

In *Everson* v. *General Fire & Life Assur. Corp.* 202 *Mass.* 169, 88 N.E. 658, the court reviewed a number of cases and concluded the word "occupation" as employed in insurance policies was a term of broad significance and "includes the trade, calling, profession, office, employment or business by which one usually gets his living. It is not incidental, recreatory or even necessary suspension of the performance of regular duty, which constitutes a change of occupation. Vacation expedients differ almost as widely as the temperaments of men. The occasional recurrence for diversion or recuperation to tilling the soil does not convert the business or professional man into a farmer. The statesman felling trees for exercise could not thereby be classified properly as a wood chopper by occupation. Where the nature of the employment is narrow and classification is strict and closely subdivided, change from one class of compensated work to another may effect a change, * * *. But where comprehensive phraseology is used, a slight variation from daily routine does not rise to the

dignity of a change of the main purpose of one's business activity."

Defendant having undertaken to rely upon the defense that there had been a breach of the occupation condition of the policy, it was incumbent upon it to plead affirmative matter which would bring its case within the terms of the policy, that is, that Eden had engaged in an occupation other than farming. To say that he was engaged in the capacity of salesman for the cattle company is not sufficient to say, as a pleading, that he had engaged in an occupation other than farming. Under the cases cited, it was possible for Eden to have been engaged in the occupation of farming and at the same time have an arrangement with the cattle company whereby he would make an occasional sale but which, in itself, would not be sufficient to show that he had engaged his time as salesman so as to constitute his efforts in this line an occupation other than farming. The allegation that he was driving his car at the time of the accident in his capacity as salesman and plaintiffs' reply denying the same did not present an issue on the change of occupation. Under such circumstances, the affirmative defenses did not state facts which, if proved, would effect a forfeiture of the policy.

The provision in the special endorsement, that if the motor vehicle described in the policy was "used for any purpose other than ordinary farm and/or pleasure purposes," is so clearly related to the provision that excluded liability if Eden engaged in an occupation other than farming, that the meaning of the phrase in reference to the use of the automobile and of the phrase as to the occupation of Eden must be determined by application of the same principles. The word "used," in designating the purposes for which the automobile might be employed, referred to the use Eden would make of it in the course of his occupation as a farmer. The allegations in the affirmative defenses, subdivision (a) of subparagraph 5 of paragraph I

and affirmative defense II were drawn on the theory that 'the use of the automobile for farming purposes was changed when Eden supposedly changed his occupation. Accordingly, it must be held that an occasional or isolated driving of the automobile in connection with some business other than that which pertains to farming does not warrant a forfeiture of the policy. Defendant's pleadings refer to but one time in which the automobile was used for other than farm or pleasure purposes, and that was the trip on which the accident occurred. There is nothing to indicate that the automobile was used extensively in connection with some occupation other than farming. Under such circumstances, the facts pleaded on this point did not state a defense to the cause of action set forth in plaintiffs' amended complaint.

That part of defendant's answer and affirmative defense which alleged Eden's acceptance of benefits under the Workmen's Compensation Act as an employee of the cattle company was not a defense to plaintiffs' claim. The pleadings show that the policy was issued November 27, 1935, the accident occurred in August, 1936, Eden received injuries in such accident, made claim for compensation as an employee of the cattle company and executed his final receipt for benefit payments on April 7, 1937. Plaintiffs did not obtain their judgments against Eden until December 31, 1938. Thus Eden's action in accepting compensation from the cattle company's insurance carried predated the time when plaintiffs obtained their judgment against Eden. The question is as to whether Eden's acts in accepting compensation benefits as an employee of the cattle company cut off plaintiffs' rights to recover under the policy.

The statute involved (Ill. Rev. Stat. 1935, chap. 73, par. 466(1)) provided that all policies issued by any insurance carrier organized and engaged in the business of insuring or indemnifying any person against loss or liability for death or for any injury to the person or prop-

erty of another shall be deemed and construed to contain a provision that the carrier would be liable to the person entitled to recover for such death or injury to person or property when caused by the insured in the same manner and to the same extent that the carrier would be liable to the insured. The statute further provided that liability might be enforced by the person entitled to recover by an action against the carrier to be commenced at any time after the rendition of final judgment in favor of such person against the insured. The provision in the policy followed the language of the statute and made the company liable to any person entitled to recover for death or for any injury to person or property caused by the insured, provided such liability should not exceed the liability of the company to the insured. It adopted the statute as to when the action could be commenced against an insurance carrier.

Under the policy, the possibility of the insured becoming a beneficiary was always present. That was within the terms of the contract. But the statutory provision incorporated into the contract brought within the terms of the policy another class of beneficiaries. It was uncertain as to who it might be until an accident happened, the circumstances of which were within the policy. When the event occurred, legal responsibility attached to the insured and the identity of the third-party beneficiary became known. The time and place were fixed by the happening of the accident. From the occurrence of such accident until the injured party reduced his claim against the insured to judgment, he was at least a potential beneficiary under the policy with certain fixed rights upon which he could sue the company whenever he obtained a judgment against the insured. It would be an injustice to such injured party if the law would permit the acts of the insured occurring after the accident to defeat the policy. The statute is a declaration of public policy and its purpose is

to benefit the public who are injured by the negligent operation of an automobile which is described in the policy. Any other application of the law would permit an insured, acting alone as in this case, or in conjunction with the insurer, to defeat the purposes for which the statute was enacted.

Questions of the same import, or involving analogous principles, have been determined with the same result in the courts of other jurisdictions. Some of them are *Rose & Son* v. *Zurich General Accident & Liability Co.* 296 Pa. 206, 145 Atl. 813; *Zimmerman* v. *Union Automobile Ins. Co.* 133 Ore. 600, 291 Pac. 495; *Finkelberg* v. *Continental Casualty Co.* 126 Wash. 543, 219 Pac. 12; *Rushing* v. *Commercial Casualty Ins. Co.* 251 N. Y. 302, 167 N.E. 450; *Spann* v. *Commercial Standard Ins. Co.* 82 Fed. 2d 593. In the latter case it was said: "The rights of the injured party arise, however, immediately upon the happening of the accident. * * * This right, arising from contract, cannot be destroyed by an attempted subsequent cancellation, release, or compromise by the insured and insurer * * *. A contrary rule allowing the insured and insurer to destroy the claim of the injured would render the right of little value." Eden's acceptance of workmen's compensation benefits as an employee of the cattle company did not establish that he had changed his occupation to something other than farming.

The Appellate Court held that all questions raised by plaintiffs' motion in arrest were cured by verdict. It stated the well-established rule that if the complaint or the pleadings of defendant are so defective that no judgment can be rendered thereon, then the motion will lie, but, after an analysis of the pleadings, concluded that an issue of fact was submitted to the jury which was determinative of the validity of the policy. Our analysis of the pleading and construction of the contract leads to the conclusion that defendant's answer and affirmative defenses did not state

a case which, if proved, would show the policy was forfeited. As stated, the issue was as to whether Eden had been employed by the cattle company, which, if answered in the affirmative, would not warrant a forfeiture of the policy.

Reference is had to paragraph (2) of section 42, (par. 166,) of the Civil Practice Act, and paragraph (4) of section 43, (par. 167,) but there is nothing in them which excuses a plaintiff from the requirement of the former practice that he must state a cause of action. Nor is there anything in said sections which changes the former well-established rule that a plea of forfeiture of the contract must contain a statement of facts which, if proved, would bring the defense within the terms of the forfeiture clause. *Midwest Dairy Products Co.* v. *Ohio Casualty Ins. Co.* 356 Ill. 389.

Defendant's motion, made after it had been defaulted and after judgment was entered in the second trial, asked that the order of the trial court allowing the motion in arrest of judgment be vacated. It did not question the findings or the procedure followed in the second trial except to contend it was a nullity. This was founded on the contention that the motion in arrest was improperly allowed and that the only thing the trial court should have done was to enter judgment on the verdict. The matter having been so presented, and since we have held that the motion in arrest was properly allowed, there is nothing that occurred on the second trial that is open for review on this appeal. Accordingly, the judgment of the Appellate Court is reversed, and the judgment of the circuit court is affirmed.

*Appellate Court reversed; circuit court affirmed.*

Mr. Justice Gunn, dissenting:

I disagree with the majority in that part of the opinion which affirms the ruling of the circuit court in allowing

and sustaining a motion in arrest of judgment. I think to do so is contrary to well-known principles of pleading as well as the express words of the statute. In the trial court a plea was filed by the defendant to the effect there was a provision in the policy of insurance made in consideration of reduced premium, which excused liability under certain conditions. This was designated as "farmer endorsement," which in effect provided a change of occupation would relieve the insurer of liability.

The plea alleged: (a) That on the occasion of the accident the insured was using the automobile in selling cattle in his capacity of a salesman of cattle for a cattle company; (b) that after the issuance of the policy and before the accident the insured was employed by the cattle company, and acted as such salesman, whereby the policy of insurance became of no effect. Issue was had upon this plea and a verdict rendered.

It is unnecessary to go into the details of the various proceedings after the verdict other than to say it was appealed to the Appellate Court and then to the Supreme Court, and then back to the circuit court, where for the first time the sufficiency of the plea was questioned by motion in arrest of judgment. The circuit court allowed the motion; the Appellate Court reversed the circuit court, and by the present opinion we hold the plea of the defendant was subject to arrest of judgment after it had remained unquestioned in all of the foregoing.

Section 42 of the Civil Practice Act provides: "(1) If any pleading is insufficient in substance or form the court may order a fuller or more particular statement; * * *. (2) No pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called upon to meet." Certainly, the plea in this instance told the plaintiff that they were relying upon a provision in the policy which prohibited a farmer from

acting as a cattle salesman, and that he was so acting at the time of the accident. It may well be that the plea was insufficient and contained conclusions, and was possibly subject to demurrer. Section 42, however, defines substance as being something that reasonably informs the other side of the defense. It is only for want of substance, *viz.,*— want of a cause of action or defense that the motion in arrest of judgment is available; and if section 42 contained nothing more than that quoted above the pleading would comply with the statute in containing matter of substance.

However, section 42 does not stop at this stage, but further provides: "(3) All defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived." Language could hardly be clearer to indicate that no defect, even in matter of substance, not raised in the trial court can be further questioned. I think, however, that the matter is specifically covered by the provisions of the chapter of the statute on Amendments and Jeofails, chapter 7, which is not repealed by the Civil Practice Act. Section 6 of this act provides: "Judgment shall not be arrested or stayed after verdict, nor shall any judgment upon verdict or finding by the court, or upon confession *nil dicit* * * * or upon any writ of inquiry of damages be reversed, impaired, or in any way affected, by reason of any of the following imperfections, omissions, defects, matters or things in the process, pleadings, proceedings or records, namely: * * * Fifth—For any mispleading, insufficient pleading, lack of color, miscontinuance, discontinuance or misjoining of the issue, or want of a joinder of the issue. * * * Ninth— For the want of any allegation or averment on account of which omission a motion raising an objection to such omission in the pleading could have been maintained."

While it is true under the old Practice Act and the earlier decisions resting on the common law many judg-

ments have been arrested for defects in pleading, yet, it would seem that we are controlled by the present Civil Practice Act, which, taken in conjunction with the provisions of the statute on Amendments and Jeofails pointed out above would indicate that a motion in arrest of judgment should not be granted after a verdict is reached, and certainly not if it had been in different courts of appeal over a period of years.

Mr. JUSTICE FULTON joins in the foregoing dissenting opinion.

Mr. JUSTICE WILSON, also dissenting.