The HOME INSURANCE COMPANY
OF ILLINOIS, Plaintiff,

v.

ADCO OIL COMPANY, a corporation
Defendants.

No. 96 C 6464.

United States District Court,
N.D. Illinois,
Eastern Division.

June 5, 1997.

---

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, IL, for plaintiff.

Mark J. Rose, Law Offices of Mark J. Rose, Chicago, IL, for defendant.

1. Jurisdiction of the court is based on diversity of citizenship. 28 U.S.C. 1441. The parties agree that Illinois law applies.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, The Home Insurance Company of Illinois ("Home"), has filed a complaint [1] for declaratory judgment against defendant, Adco Oil Company ("Adco"), alleging that it is not liable to indemnify defendant for defendant's claim against plaintiff's insured, Michael J. Rovell ("Rovell"). Plaintiff requests this court to enter judgment declaring that: (1) Rovell breached the Notice of Claims provision of his insurance policy with plaintiff; (2) plaintiff has no duty or obligation to defend Rovell against Adco; and (3) plaintiff be awarded its just and reasonable costs for prosecuting this suit.

Both parties have filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, this court grants defendant's and denies plaintiff's motion for summary judgment.

### FACTS [2]

Plaintiff issued its insurance policy No. CPL–C106252 to Rovell, a lawyer, as the insured party. The policy was effective from April 1, 1994, to April 1, 1995. The policy sets for the scope of coverage, in pertinent part, as follows:

I. *Professional Liability and Claims– Made Clause:*

To pay on behalf of the insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD caused by any act, error, or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render personal services for others in the Insured' s capacity as a lawyer or notary public. [emphasis in original].

2. The undisputed facts are taken from the parties' Local Rule 12(M) and 12(N) statements.

Plaintiff's "policy period," as used in the insuring agreement, is defined as follows:

"Policy Period," whenever used in this policy, means the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any.

Section "F" of the Policy reads in pertinent part:

I. *Notice of Claims:* As a condition precedent to the right to the protection afforded by this insurance, the Insured shall, as soon as practicable, give to the Company written notice of any claim made against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to the Company every demand notice, summons, or other process received directly or by the Insured's representatives.

On October 21, 1994, defendant filed an action against Rovell in the United States District Court for the Western District of Oklahoma (the "Adco malpractice action"), alleging a number of serious charges of malpractice in connection with major litigation in which Rovell represented defendant in Oklahoma. According to the malpractice complaint, Rovell intentionally and negligently breached his duties to defendant, causing millions of dollars in damages. Apparently, the Adco malpractice action is still pending.

The first notice plaintiff had of the Adco malpractice action was a June 9, 1995, letter from defendant to plaintiff stating that defendant had filed a suit against Rovell. According to defendant, Rovell has admitted in his bankruptcy proceeding (described below) that he intentionally did not notify plaintiff of the malpractice suit because he regarded defendant's claims as frivolous, he believed that filing a claim would negatively impact his future insurance premiums, and he would have to pay the $10,000 deductible. In addition, defendant contends that Rovell deliberately concealed his malpractice policy with plaintiff—in violation of a local rule of the Oklahoma district court—until after the policy period expired on April 1, 1995. Plaintiff does not dispute these claims of deception by

Rovell to defeat policy coverage of defendant's malpractice claims against him.

Sometime after the policy expired, Rovell filed a petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. On May 13, 1996, pursuant to an order of the bankruptcy court, Rovell tendered his defense in the Adco malpractice action to plaintiff. Plaintiff originally filed an action against Rovell and defendant in the bankruptcy court, which entered a default judgment against Rovell on September 20, 1996. As a result of Rovell's default in the bankruptcy court proceedings, plaintiff filed the instant declaratory judgment complaint in this court.

Plaintiff's motion for summary judgment contends: (1) the policy is unambiguous and defendant's claim against Rovell was not reported to plaintiff within the policy period; and (2) as a result, the insuring agreement of the policy was not triggered, and plaintiff is entitled to a declaration that it has no duty or obligation to defend Rovell in the Adco action.

Defendant's cross-motion for summary judgment contends that: (1) neither the insured nor the insurer's conduct after the insuring event may defeat its rights as an intended beneficiary of the insurance contract; and (2) the policy language is ambiguous and must be construed in favor of coverage.

## DISCUSSION

### I. Standard

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgment motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment mo-

tion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. Contract Construction

The construction of an insurance policy's provisions and the determination of rights and obligations are questions of law for the court and are appropriate subjects for disposition by summary judgment. *Crum and Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 189 Ill.Dec. 756, 620 N.E.2d 1073, 1077 (1993); *see Millers Mut. Ins. Assoc. of Illinois v. Graham Oil Co.,* 282 Ill.App.3d 129, 133, 218 Ill.Dec. 60, 64, 668 N.E.2d 223, 227 (1996). If the words in an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Miller's Mut. Ins. Assoc.,* 282 Ill. App.3d at 133, 218 Ill.Dec. at 64, 668 N.E.2d at 227; *see United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981). The court will not search for ambiguity where there is none. *United States Fire Ins. Co.,* 88 Ill.2d at 2, 57 Ill.Dec. at 841, 429 N.E.2d at 1204.

In the instant case, there is no ambiguity in the terms of the contract. Its language clearly indicates that it is a "claims made and reported" policy, which requires a claim to be reported within the inception and expiration dates of the contract. These contracts pervade the liability insurance industry. *See e.q. United States v. A.C. Strip,* 868 F.2d 181 (6th Cir.1989) (where policy read: "[t]he Company shall pay on behalf of the Insured ... as a result of Claims first made against the insured and reported to the Company during the Policy Period ..."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bauman,* 1992 WL 1738 (N.D.Ill., 1992) (where policy read: "[a] claim shall be considered to be reported to the Company when the Company, or its authorized agent, first receives written notice of the claim or ... event").

Defendant does not deny that the instant policy is a "claims made and reported" policy. It also does not claim that the instant policy

is an "occurrences" policy, which allows a claim to be made against an insurer within a "reasonable time" if the event arose within the policy dates, regardless of whether that claim is made during or after the policy period.

Rather, defendant contends that the policy is ambiguous because it contains two conflicting clauses that suggest different constructions of the policy terms: (1) the coverage clause, which states that the notice to the insurer must occur during the policy period, and (2) Section "F", which states that the insurer must receive notice of a claim "as soon as practicable." This court must consider the policy as a whole, with due regard to the risk undertaken by the insurance carrier, the subject matter insured, and the purposes of the entire contract, to determine if an ambiguity exists. *Millers Mut. Ins. Assoc.,* 282 Ill.App.3d at 133, 218 Ill.Dec. at 64, 668 N.E.2d at 227.

In a policy where "claims made and reported" and "as soon as practicable" language co-exist, courts have found that the "as soon as practicable" language is intended to preclude an insured who has knowledge of a claim near the beginning of the policy period, from waiting many months until near the end of the policy period to notify the insurer of the existence of the claim, when such delay would cause prejudice to the insurer. It does not excuse, modify, or render ambiguous the claim reporting requirement recited in the Notice of Claim provision as a condition of coverage. *A.C. Strip,* 868 F.2d at 186–87.

Thus, the court finds that the terms of the contract are not ambiguous and require that claims be made and reported during the policy period. If this action involved only the insured, Rovell, and the insurer, plaintiff, this holding would compel judgment for plaintiff. However, as discussed below, the vesting of rights in a third-party beneficiary leads to a contrary result.

## III. Illinois Insurance Law—Public Policy Considerations

As noted in defendant's summary judgment brief: "It is the public policy of Illinois

to protect third-party beneficiaries of liability insurance claims by preventing either an insurer or an insured from acting separately or together to defeat the vested rights of the injured party." Defendant relies on *Reagor v. Travelers Ins. Co.*, 92 Ill.App.3d 99, 47 Ill.Dec. 507, 415 N.E.2d 512 (1980), which found that the injured parties had standing to bring a declaratory judgment action against the insurer, and that as a beneficiary of a liability policy, an injured person has rights under the policy that vest at the time of occurrence giving rise to his injuries. *Id.* 47 Ill.Dec. at 509, 415 N.E.2d at 514. Plaintiff does not deny that defendant has standing to bring a claim in the instant case or that defendant's rights under the policy had vested at the time the Adco malpractice action was filed.

■ The question to be decided, therefore, is whether the insured lawyer, Rovell, can unilaterally defeat the vested rights of defendant, the injured party, or beneficiary, of plaintiff's malpractice policy. The answer is no—the Illinois courts have long held that once the injured party's rights vest, "[n]either the insured nor the insurer, acting separately or together, may defeat the rights of the injured person." *Reagor,* 92 Ill.App.3d at 102, 47 Ill.Dec. at 509, 415 N.E.2d at 514.

■ The *Reagor* court cited *France v. Citizens Casualty Co.,* 400 Ill. 55, 59, 79 N.E.2d 28, 30 (1948), for the above-quoted proposition. The France court relied on *Scott v. Freeport Motor Casualty Co.,* 392 Ill. 332, 64 N.E.2d 542 (1945), for the same principle. In *Scott,* the Illinois Supreme Court held (for the first time in Illinois) that acts by the insured, occurring after an accident giving rise to a policy claim, could not defeat the claim by the injured party. The court noted that an Illinois statute provided that all policies insuring any person against loss or liability for death or injury to the person or property of another are deemed to provide that the insurance carrier would be liable to the injured third party to the same extent that the carrier would be liable to the insured. *Id.* 392 Ill. at 345–346, 64 N.E.2d at 548–549. Rejecting the carrier's claim that

conduct by its insured cut off the injured plaintiff's right to recover under the policy, the court held:

> "It would be an injustice to such injured party if the law would permit the acts of the insured occurring after the accident to defeat the policy. The statute is a declaration of public policy and its purpose is to benefit the public who are injured by the negligent operation of an automobile which is described in the policy. Any other application of the law would permit an insured, acting alone as in this case, or in conjunction with the insurer, to defeat the purposes for which the statute was enacted."

In the instant case, application of these principles compels the conclusion that Rovell's act of intentionally failing to report defendant's claim cannot defeat defendant's right to recover under the policy. Like the accidents in *Reagor* and *Scott,* defendant's claim was first made against the insured, Rovell, during the policy period. Had Rovell reported the claim before April 1, 1995, there would be no question that plaintiff's malpractice policy would have covered it. Only by his willful failure to report the claim—not to mention his apparent improper avoidance of his obligation under the local rule of the district court in Oklahoma to disclose the existence and terms of his insurance to defendant—did the policy lapse. The public policy of Illinois does not permit such unilateral conduct to defeat the vested rights of the insured.

It should be noted that in addition to the policy considerations addressed by the *Reagor* and *Scott* courts, the instant case involves serious charges of attorney misconduct by the client. Regardless of the lawyer's view of the merits of those charges or his concern for his own pocketbook, it is apparent to this court that he owed his client the obligation to protect the client's rights under his malpractice policy. The lawyer certainly should not have deliberately taken steps to defeat that those rights by concealing the policy and its terms from defendant.[3]

**3.** *See,* Illinois Rule of Professional Conduct 8.4(a)(4): "A lawyer should not ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Thus, public policy not only provides that "injured members of the general public are beneficiaries of liability insurance policies" (*Reagor,* 92 Ill.App.3d at 103, 47 Ill.Dec. at 509, 415 N.E.2d at 514), it also prevents the "injustice to [the] injured party" that would result if the insured—whose interests are usually adverse to the injured party's—were able unilaterally to defeat that party's vested rights. *Scott,* 392 Ill. at 346, 64 N.E.2d at 549. This injustice would be particularly acute where the insured is an attorney and the injured party is a client who filed a malpractice action during the period the policy was in effect.

### CONCLUSION

Plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.[4] Because defendant did not file a counterclaim seeking a declaration that plaintiff is obligated to pay any judgment defendant might be awarded in the *Adco* malpractice action against Rovell, this ruling has the effect only of entering judgment for defendant and against plaintiff in its declaratory,judgment action.

---

4. plaintiff has also filed a motion to strike certain paragraphs of defendant's Local Rule 12(M) statement. That motion is denied as moot, although the court notes that many of the statements about Rovell's alleged misdeeds toward defendant that plaintiff regards as immaterial are contained in the complaint in the Adco action attached to plaintiff's Rule 12(M) statement. Finally, plaintiff's motion to strike defendant's prayer for attorneys' fees is granted in light of defendant's failure to contest that motion.