## The HOME INSURANCE COMPANY OF ILLINOIS, Plaintiff,

and

## Michael J. Rovell, Intervenor–Plaintiff

v.

## ADCO OIL COMPANY, Defendant.

### No. 96 C 6464.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 1997.

---

**15.** Because we find that plaintiffs are not covered by FLSA, whether defendants willfully violate FLSA (Count II) is moot.

**1058**

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, IL, for Plaintiff.

Michael J. Rovell, Lisa I. Fair, Law Offices of Michael J. Rovell, Chicago, IL, for Intervenor–Plaintiff.

Mark J. Rose, Law Offices of Mark J. Rose, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, The Home Insurance Company of Illinois ("Home"), has filed a complaint[1] for declaratory judgment against defendant, Adco Oil Company ("Adco"), alleging that it is not liable to indemnify Adco for Adco's claim against Home's insured, Michael J. Rovell ("Rovell"). Home seeks a judgment declaring that: (1) Rovell breached the Notice of Claims provision of his insurance policy with Home; (2) Home has no duty or obligation to defend Rovell against Adco; and (3)

Home be awarded its just and reasonable costs for prosecuting this suit.

Home and Adco filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. On June 5, 1997, this court issued an opinion in which it denied Home's motion for summary judgment and granted Adco's cross-motion for summary judgment. At that time, Rovell was not a party to the suit. Thereafter, Home filed a motion to reconsider and Rovell filed a petition to intervene and a motion to reconsider. Rovell argues in his petition to intervene that certain factual statements made by the court in its June 5 opinion will damage his reputation. Rovell asserts that the court's statements were based on allegations that were made by Adco, and were not disputed by Home. In light of Rovell's petition to intervene and the motions to reconsider, the court provisionally vacated its June 5 opinion and order.

The court hereby grants Rovell's petition to intervene for the sole purpose of clarifying certain factual statements made by the court in its June 5 opinion regarding Rovell's behavior. Rovell is not being permitted to intervene in order to address the merits of the instant dispute between Home and Adco. For the reasons set forth below, this court denies Home's motion to reconsider, denies Rovell's motion to reconsider, denies Home's motion for summary judgment, and grants Adco's cross-motion for summary judgment.

### FACTS

Home issued its insurance policy No. CPL–C106252 to Rovell, a lawyer, as the insured party. The policy was effective from April 1, 1994, to April 1, 1995. The policy sets for the scope of coverage, in pertinent part, as follows:

I. *Professional Liability and Claims–Made Clause:*

To pay on behalf of the insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST

---

1. Jurisdiction is based on diversity of citizenship. 28 U.S.C. 1441. The parties agree that Illinois law applies.

MADE AGAINST THE INSURED DUR-ING THE POLICY PERIOD AND RE-PORTED TO THE COMPANY DURING THE POLICY PERIOD caused by any act, error, or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render personal services for others in the Insured's capacity as a lawyer or notary public. [emphasis in original].

Home's "policy period," as used in the insuring agreement, is defined as follows:

"Policy Period," whenever used in this policy, means the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any.

Section "F" of the Policy reads in pertinent part:

I. *Notice of Claims:* As a condition precedent to the right to the protection afforded by this insurance, the Insured shall, as soon as practicable, give to the Company written notice of any claim made against the Insured.

In the event suit is brought against the Insured, the Insured shall immediately forward to the Company every demand notice, summons, or other process received directly or by the Insured's representatives.

On October 21, 1994, Adco filed an action against Rovell in the United States District Court for the Western District of Oklahoma alleging malpractice (the "Adco malpractice action"). According to the malpractice complaint, Rovell intentionally and negligently breached his duties to Adco, causing millions of dollars in damages. Apparently, the Adco malpractice action is still pending.

The first notice Home had of the Adco malpractice action was a June 9, 1995, letter from Adco to Home stating that Adco had filed a suit against Rovell. According to Adco, Rovell has admitted in his bankruptcy proceeding (described below) that he intentionally did not notify Home of the malpractice suit because he regarded Adco's claims as frivolous, he believed that filing a claim would negatively impact his future insurance premiums, and he would have to pay the $10,000 deductible. In addition, Adco contends that Rovell deliberately concealed his malpractice policy with Home—allegedly in violation of Local Rule 17 of the United States District Court for the Western District of Oklahoma—until after the policy period expired on April 1, 1995. Home does not dispute these claims of deception by Rovell to defeat policy coverage of Adco's malpractice claims against him.[2]

Sometime after the policy expired, Rovell filed a petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. On May 13, 1996, pursuant to an order of the bankruptcy court, Rovell tendered his defense in the Adco malpractice action to Home. Home filed a declaratory judgment action against Rovell and Adco in the bankruptcy court. On September 20, 1996, the bankruptcy court entered a default judgment against Rovell based on Rovell's failure to file a responsive pleading in that action and found that Home had no duty to defend Rovell in the Adco malpractice action. As a result of Rovell's default, Home filed the instant declaratory judgment complaint against Adco in this court.[3]

Home's motion for summary judgment contends: (1) the policy is unambiguous and Adco's claim against Rovell was not reported to Home within the policy period; and (2) as a result, the insuring agreement of the policy was not triggered, and Home is entitled to a

---

**2.** Rovell concedes before this court, as he did before the bankruptcy court, that he intentionally did not notify Home of the Adco malpractice action. Rovell also admits that he did not notify Adco of the existence of his insurance policy until the end of April, 1995, after the policy had expired on April 1, 1995. Rovell, however, asserts that he did not intend to conceal the policy and that he did not violate Local Rule 17 of the Oklahoma district court. Rovell has submitted a Local Rule 12(N) statement supporting his version of events in response to Adco's 12(M) state-

ment. Ultimately, the truth or falsity of Adco's allegations against Rovell will be determined in the Adco malpractice action. This court need not address the merits of that action to resolve the instant dispute between Home and Adco.

**3.** In light of his default in the bankruptcy court, it is particularly appropriate that this court is limiting the scope of Rovell's intervention and preventing him from addressing the merits of the dispute between Home and Adco.

declaration that it has no duty or obligation to defend Rovell in the Adco action.

Adco's cross-motion for summary judgment contends that: (1) neither the insured nor the insurer's conduct after the insuring event may defeat its rights as an intended beneficiary of the insurance contract; and (2) the policy language is ambiguous and must be construed in favor of coverage.

## *DISCUSSION*

### I. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgment motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### II. CONTRACT CONSTRUCTION

The construction of an insurance policy's provisions and the determination of rights and obligations are questions of law for the court and are appropriate subjects for disposition by summary judgment. *Crum and Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 189 Ill.Dec. 756, 759, 620 N.E.2d 1073, 1077 (1993); *see Millers Mut. Ins. Assoc. of Illinois v. Graham Oil Co.,* 282 Ill.App.3d 129, 133, 218 Ill.Dec. 60, 668 N.E.2d 223, 227 (1996). If the words in an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Millers Mut. Ins. Assoc.,* 218 Ill. Dec. 60, 668 N.E.2d at 227; *see United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981). The court will not search for ambiguity where there is none. *United States Fire Ins. Co.,* 57 Ill.Dec. 840, 429 N.E.2d at 1204.

In the instant case, there is no ambiguity in the terms of the contract. Its language clearly indicates that it is a "claims made and reported" policy, which requires a claim to be reported within the inception and expiration dates of the contract. These contracts pervade the liability insurance industry. *See e.g., United States v. A.C. Strip,* 868 F.2d 181 (6th Cir.1989) (where policy read: "[t]he Company shall pay on behalf of the Insured ... as a result of Claims first made against the insured and reported to the Company during the Policy Period...."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bauman,* 1992 WL 1738 (N.D.Ill. Jan.2, 1992) (where policy read: "[a] claim shall be considered to be reported to the Company when the Company, or its authorized agent, first receives written notice of the claim or ... event"), *aff'd,* 997 F.2d 305 (7th Cir.1993).

Adco does not deny that the instant policy is a "claims made and reported" policy. It also does not claim that the instant policy is an "occurrences" policy, which allows a claim to be made against an insurer within a "reasonable time" if the event arose within the policy dates, regardless of whether that claim is made during or after the policy period.

Rather, Adco contends that the policy is ambiguous because it contains two conflicting clauses that suggest different constructions of the policy terms: (1) the coverage clause, which states that the notice to the insurer must occur during the policy period, and (2) Section "F", which states that the insurer must receive notice of a claim "as soon as practicable." This court must consider the policy as a whole, with due regard to the risk undertaken by the insurance carrier, the subject matter insured, and the purposes of the entire contract, to determine if an ambiguity exists. *Millers Mut. Ins. Assoc.,* 218 Ill.Dec. 60, 668 N.E.2d at 227.

In a policy where "claims made and reported" and "as soon as practicable" language coexist, courts have found that the "as soon as practicable" language is intended to preclude an insured who has knowledge of a claim near the beginning of the policy period, from waiting many months until near the end of

the policy period to notify the insurer of the existence of the claim, when such delay would cause prejudice to the insurer. It does not excuse, modify, or render ambiguous the claim reporting requirement recited in the Notice of Claim provision as a condition of coverage. *A.C. Strip,* 868 F.2d at 186–87.

Thus, the court finds that the terms of the contract are not ambiguous and require that claims be made and reported during the policy period. If this action involved only the insured, Rovell, and the insurer, Home, this holding would compel judgment for Home. However, as discussed below, the vesting of rights in a third-party beneficiary leads to a contrary result.

### III. ILLINOIS INSURANCE LAW AND PUBLIC POLICY CONSIDERATIONS

■ As noted in Adco's summary judgment brief: "It is the public policy of Illinois to protect third-party beneficiaries of liability insurance claims by preventing either an insurer or an insured from acting separately or together to defeat the vested rights of the injured party." Adco relies on *Reagor v. Travelers Ins. Co.,* 92 Ill.App.3d 99, 47 Ill. Dec. 507, 415 N.E.2d 512 (1980), which found that the injured parties had standing to bring a declaratory judgment action against the insurer, and that as a beneficiary of a liability policy, an injured person has rights under the policy that vest at the time of occurrence giving rise to his injuries. *Id.,* 47 Ill.Dec. at 514, 415 N.E.2d at 513. Home does not deny that Adco has standing to bring a claim in the instant case or that Adco's rights under the policy had vested at the time the Adco malpractice action was filed.

■ The question to be decided, therefore, is whether the insured lawyer, Rovell, can unilaterally defeat the vested rights of Adco, the injured party or beneficiary, of Home's malpractice policy. The answer is no—the Illinois courts have recognized that once the injured party's rights vest, "[n]either the insured nor the insurer, acting separately or together, may defeat the rights of the injured person." *Reagor,* 47 Ill.Dec. 507, 415 N.E.2d at 514.

The *Reagor* court cited *France v. Citizens Casualty Co.,* 400 Ill. 55, 59, 79 N.E.2d 28, 30 (1948), for the above-quoted statement of public policy. The *France* court relied on *Scott v. Freeport Motor Casualty Co.,* 392 Ill. 332, 64 N.E.2d 542 (1945), for the same principle. In *Scott,* the Illinois Supreme Court held (for the first time in Illinois) that acts by the insured, occurring after an accident giving rise to a policy claim, could not defeat the claim by the injured party. The court noted that an Illinois statute provided that all policies insuring any person against loss or liability for death or injury to the person or property of another are deemed to provide that the insurance carrier would be liable to the injured third party to the same extent that the carrier would be liable to the insured. *Scott,* 64 N.E.2d at 548–49. Rejecting the carrier's claim that conduct by its insured cut off the injured party's right to recover under the policy, the court held:

"It would be an injustice to such injured party if the law would permit the acts of the insured occurring after the accident to defeat the policy. The statute is a declaration of public policy and its purpose is to benefit the public who are injured by the negligent operation of an automobile which is described in the policy. Any other application of the law would permit an insured, acting alone as in this case, or in conjunction with the insurer, to defeat the purposes for which the statute was enacted."

*Id.,* 64 N.E.2d at 549.

In the instant case, application of these principles compels the conclusion that Rovell's act of intentionally failing to report Adco's claim cannot defeat Adco's right to recover under the policy. Like the accidents in *Reagor* and *Scott,* Adco's claim was first made against the insured, Rovell, during the policy period. Had Rovell reported the claim before April 1, 1995, there would be no question that Home's malpractice policy would have covered it. The policy lapsed only because Rovell failed either to report the claim himself or to disclose the existence and terms of his insurance policy to Adco so that it could report the claim. The public policy of Illinois does not permit such unilateral con-

duct to defeat the vested rights of the insured.

In support of its motion to reconsider, Home argues that the court's reliance on *Reagor* is flawed because the issue before the *Reagor* court was one of standing, making the *Reagor* court's discussion of injured parties as third party beneficiaries of insurance contracts "pure dictum." Apparently, Home misunderstands the meaning of the term dictum. "A dictum is 'any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication.'" *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir.1988) (quoting *Stover v. Stover*, 60 Md.App. 470, 483 A.2d 783, 786 (1984)); *see also, Black's Law Dictionary* 454 (6th ed. 1990) ("Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication"). The *Reagor* court's discussion of Illinois public policy was essential to the court's resolution of the issue before it. It was, therefore, not dicta. On the contrary, the *Reagor* court clearly pronounced an Illinois public policy broad enough to control the result in the instant case.

Home also relies on *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422 (8th Cir. 1989), in its motion to reconsider. In *Esmailzadeh*, the plaintiffs attempted to serve a complaint alleging legal malpractice on a law firm, Johnson & Speakman, ("the firm") while a "claims made and reported" insurance policy issued to the firm by Pacific Employers Insurance Company ("Pacific") was in effect. The service was ineffective, and the firm did not report the plaintiffs' attempted service to Pacific at that time. The firm later purchased a separate "claims made and reported" policy from New York Insurance Exchange, Inc. ("Exchange"). The firm did not disclose the fact that the plaintiffs had attempted to serve a complaint against it when it obtained the policy from Exchange. The plaintiffs effected service of their malpractice complaint against the firm on the day that the coverage by Exchange began. Several months later, the firm reported the plaintiffs' claim to Pacific and the underwriters of the policy issued by Exchange.

The plaintiffs obtained a judgment against the firm, which assigned its claims against the insurance companies to the plaintiffs. The district court rejected the plaintiffs' attempt to hold Pacific liable because the plaintiffs' claim was made, but not reported, during the policy period. The Court of Appeals affirmed, finding that Pacific "clearly disclaim[ed] the risk of failure on the part of its insured to give it timely notice." This court, however, is not persuaded. *Esmailzadeh* is not binding precedent in this circuit. Moreover, *Esmailzadeh* involved the application of Minnesota law, not the public policy of Illinois. Finally, there is no indication in the *Esmailzadeh* opinion that Minnesota embraces the broad public policy favoring third-party beneficiaries announced by the *Reagor* court.

It should also be noted that in addition to the policy considerations addressed by *Reagor* and *Scott*, the instant case involves serious charges of attorney misconduct. Regardless of a lawyer's view of the merits of a client's malpractice claim or his concern for his own pocketbook, it is apparent to this court that a lawyer has a duty to protect a client's rights under his malpractice policy. Especially in light of a local rule requiring disclosure, a lawyer certainly should not take deliberate steps to defeat a client's rights under his malpractice policy by concealing the policy and its terms.[4]

Thus, Illinois public policy not only provides that "injured members of the general public are beneficiaries of liability insurance policies," *Reagor*, 47 Ill.Dec. 507, 415 N.E.2d at 514, it also prevents the "injustice to [the] injured party" that would result if the insured—whose interests are usually adverse to the injured party's—were able unilaterally to defeat that party's vested rights. *Scott*, 64 N.E.2d at 549. This injustice would

4. Rovell argues that Adco assigned its claims to a third party, Hugoton Joint Venture ("HJV"), that HJV—not Adco—retained him to litigate those claims, and that Adco was, therefore, not his client. The court need not resolve this dispute to render judgment in the instant case.

be particularly acute where the insured is an attorney and the injured party is a client (even a putative client) who filed a malpractice action during the period the policy was in effect.

## CONCLUSION

Home's motion for summary judgment is denied and Adco's cross-motion for summary judgment is granted.[5] Home's motion to reconsider is denied. Rovell's motion to reconsider is denied.[6]

---

5. Adco asserts that it submitted its cross-motion for summary judgment so that this court could "determine, as a matter of law, that [Home] has an obligation, under the terms of [Rovell's insurance policy,] to pay damages Adco sustained which were directly caused by Rovell's legal negligence and breach of fiduciary duty." The court cannot grant Adco this relief because Adco did not file a counterclaim seeking a declaration that Home is obligated to pay any judgment Adco might be awarded in the Adco malpractice action against Rovell. The fact that Rovell failed to report Adco's claim does not entitle Home to a declaration that it has no duty to defend Rovell against Adco. Yet, the resolution of other factual disputes not before this court—such as whether Adco was actually Rovell's client—could still re-

sult in the denial of coverage. Accordingly, this ruling has the effect only of entering judgment for Adco and against Home in the instant declaratory judgment action.

6. Home also filed a motion to strike, as irrelevant, certain paragraphs of Adco's Local Rule 12(M) statement that refer to the Adco malpractice action. That motion is denied as moot, although the court notes that many of the statements about Rovell's alleged misdeeds toward Adco are contained in the complaint in the Adco action attached to Home's Rule 12(M) statement, and are vigorously denied by Rovell. Finally, Home's motion to strike Adco's prayer for attorneys' fees is granted in light of Adco's failure to contest that motion.